[Cite as *J & D Rack Co., Inc. v. Kreimer*, 194 Ohio App.3d 479, 2011-Ohio-2358.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| J & D RACK COMPANY, INC., | : | APPEAL NOS. C-100476 |
| | | C-100496 |
| Appellant and | : | TRIAL NO. A-0904109 |
| Cross-Appellee, | | |
| | : | *D E C I S I O N.* |
| v. | | |
| | : | |
| KREIMER ET AL., | | |
| | : | |
| Appellees and | | |
| Cross-Appellants. | : | |

Civil Appeals From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  May 18, 2011

Eric C. Deters & Associates, P.S.C., and Geoffrey P. Damon, for appellant and cross-appellee.

Murray, Murphy, Moul & Basil, L.L.P., and Joseph F. Murray, for appellees and cross-appellants.

Please note:  This case has been removed from the accelerated calendar.

Per Curiam.

{¶1} These appeals arise out of a dispute over a land-improvement contract between J & D Rack Company, Inc. ("Rack Co.") and Timothy and Melissa Kreimer. Following a bench trial, the Hamilton County Court of Common Pleas held Rack Co. liable for breaching its contract with the Kreimers and violating Ohio's Consumer Sales Practices Act ("CSPA").[1] The court also awarded some, but not all, of the attorney fees requested by the Kreimers. We affirm that judgment.

{¶2} After considering the "substantially different stories" of the parties, the trial court found the following facts. The Kreimers purchased land on Gaines Road in Hamilton County, Ohio, intending to make the property their permanent home. They have not yet resided there, but the Kreimers have used the property, including a lake situated on it, for their own recreational purposes. In addition, although a tenant rents a house on the property and cares for approximately one acre around that house, the Kreimers have reserved the rest of the property for their own use.

{¶3} Seeking to expand their lake, the Kreimers hired Rack Co. to perform excavation work for the project, and they agreed to pay the company up to $40,000 on an installment plan. But one month later, and before the project was completed, John Rack of Rack Co. informed Timothy Kreimer that the company expected $67,000 for the work performed up to that point. The Kreimers balked at the demand and ended their relationship with the company. They ultimately paid a second contractor $16,649.02 to finish the project.

{¶4} The trial court concluded that Rack Co. had committed an anticipatory breach of contract and that it had violated the CSPA. Nevertheless, to place the

---

[1] R.C. 1345.01 et seq.

Kreimers in as good a position as they would have been in but for the breach, the trial court ordered the couple to pay Rack Co. $23,350.98, the maximum contract price less the cost to complete the project after the breach. The court further ordered Rack Co. to pay the Kreimers $5,000 in noneconomic damages and $26,675 in attorney fees. The latter amount, however, did not include the Kreimers' paralegal expenses. These appeals followed.

### Appeal No. C-100476

{¶5}     In its first assignment of error, Rack Co. asserts that the trial court erred in holding the company liable for violating the CSPA, which prohibits suppliers from committing any "unfair or deceptive act or practice in connection with a consumer transaction."[2] We are not persuaded.

{¶6}     The company first argues that its agreement with the Kreimers was not a consumer transaction. Under the CSPA, a "consumer transaction" is "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things."[3] In contrast, the purchase of goods or services for primarily business reasons is not a consumer transaction.[4] We decide whether purposes are primarily personal, family, or household by examining the "objective manifestations" of the buyer at the time of the agreement regarding how he or she intended to use the goods or services purchased.[5]

---

[2] R.C. 1345.02(A).

[3] R.C. 1345.01(A).

[4] *Ford Motor Credit Co. v. Ryan*, 189 Ohio App.3d 560, 2010-Ohio-4601, 939 N.E.2d 891, at ¶ 77.

[5] *Giffin v. Crestview Cadillac*, 10th Dist. No. 09AP-278, 2009-Ohio-6569, at ¶ 22, quoting *Tomes v. George P. Ballas Leasing, Inc.* (Sept. 30, 1986), 6th Dist. No. L-85-359.

{¶7}    Based on the Kreimers' objective intent at the time of contracting, we hold that the lake project was primarily for personal, family, or household purposes. Although the property on which the lake was situated produced rental income for the Kreimers, the family reserved much of the land for their own recreational use, and they even used the lake while the rental house was occupied.  Furthermore, the property produced rental income of only $950 per month.  Meanwhile, the Kreimers' mortgage payment on the property was $2,500 per month.  When viewed in light of the $40,000 project cost, the relatively low rental income indicates that the project was not intended to benefit the property's rental value, but rather to enhance the Kreimers' personal use. We, therefore, hold that the agreement was a consumer transaction.

{¶8}    Rack Co. also argues that even if a consumer transaction occurred, the CSPA does not apply to contracts to improve land.  Although the Ohio Supreme Court has held that the statute does not apply to "pure" real estate transactions,[6] our own precedent demonstrates that it does apply to land-improvement contracts as long as they are consumer transactions.[7]

{¶9}    In *Williams v. Edwards*, the defendant construction company needed a site to dump fill dirt from an excavation project.  The plaintiffs allowed the company to use their residential property, and in exchange, the company agreed to replace the plaintiffs' driveway.  When the work was not performed to the plaintiffs' satisfaction, they sued the company under the CSPA.  In holding that the CSPA was applicable, we determined that "contracts for improvements to one's residential property are covered by the CSPA, as they involve the sale or transfer of services for personal use."[8]

---

[6] *Brown v. Liberty Clubs, Inc.* (1989), 45 Ohio St.3d 191, 193, 543 N.E.2d 783.

[7] *Williams v. Edwards* (1998), 129 Ohio App.3d 116, 717 N.E.2d 368.

[8] Id. at 122.

{¶10}   Because the agreement between Rack Co. and the Kreimers was a consumer transaction, we hold that the CSPA was applicable to this case.  We therefore overrule Rack Co.'s first assignment of error.

{¶11}   In its second assignment of error, Rack Co. contends that the trial court erred in coming to "inconsistent verdicts."  Specifically, the company complains that the court had "no legal rationale" to award damages to both parties, but to award attorney fees only to the Kreimers.  This argument is without merit.

{¶12}   The trial court held that Rack Co. had (1) committed an anticipatory breach of its contract with the Kreimers by demanding $67,000 before completing the project and (2) violated the CSPA by materially underestimating the cost of the project and failing to provide both certain disclosures required by statute and a writing that detailed the installment plan.  To restore the Kreimers to their expected position under the contract, the court ordered the couple to pay Rack Co. the difference between the maximum contract price and their cost to complete the project.  The court also awarded damages and attorney fees specifically provided by the CSPA.[9]

{¶13}   These entirely consistent awards were based on independent holdings.  These holdings, in turn, relied on distinct events separated by over a month.  We know of no legal rationale that would preclude such a result, and therefore, we overrule Rack Co.'s second assignment of error.

{¶14}   In its third assignment of error, Rack Co. argues that the trial court erred by not ordering the Kreimers to elect their remedy.  The record, however, shows otherwise.

{¶15}   When a supplier has committed an unfair or deceptive act in connection with a consumer transaction, the consumer may "rescind the transaction or recover the

---

[9] See R.C. 1345.09.

consumer's actual economic damages plus an amount not exceeding five thousand dollars in noneconomic damages."[10]  In addition, when the unfair or deceptive act is a violation of the Home Solicitation Sales Act ("HSSA"),[11] the consumer may elect to cancel the transaction.[12]  Although rescission must occur "before any substantial change in condition of the subject of the consumer transaction,"[13] courts have allowed cancellation even after substantial performance.[14]  Although a party may file suit under different theories of recovery, the party must elect its remedy before trial.[15]

{¶16}    At trial, the Kreimers claimed that Rack Co. had violated the CSPA by (1) materially underestimating the cost of the lake project, (2) failing to provide information and disclosures required by Ohio Adm.Code 109:4-3-05(A)(1), (3) failing to put the installment agreement in writing as required by R.C. 1317.02, and (4) violating the HSSA by not informing them of their right to cancel the transaction.

{¶17}    Before their case-in-chief, the Kreimers elected the following:

{¶18}    "[KREIMERS' COUNSEL]:   If the Court determines that the Home Solicitation Sales Act is applicable, our choice of remedy is cancellation.

{¶19}    "THE COURT: Okay.

---

[10] R.C. 1345.09(A).

[11] R.C. 1345.21 et seq. See R.C. 1345.28 ("Failure to comply with sections 1345.21 to 1245.27 of the Revised Code constitutes a deceptive act or practice in connection with a consumer transaction in violation of R.C. 1345.02 of the Revised Code").

[12] R.C. 1345.22 and 1345.23.

[13] R.C. 1345.09(C)(1).

[14] See, e.g., *McGill v. Image Scapes, L.L.C.*, 9th Dist. No. 10CA0043-M, 2010-Ohio-6246 (allowing cancellation after new lawn and landscaping was installed); *Kamposek v. Johnson*, 11th Dist. No. 2003-L-124, 2005-Ohio-344 (allowing cancellation after significant construction on a house).  But see *Kamposek* at ¶ 33 ("[W]hile there is no 'clean hands' provision in the HSSA, we caution against the scenario where a buyer enters into a contract solely to take advantage of the seller's possible failure to provide notice of the right to cancel.  The HSSA is intended to be a 'shield' for the consumer, not a 'sword' ").

[15] *Cas. Restoration Servs., L.L.C. v. Jenkins*, 1st Dist. No. C-060983, 2007-Ohio-5131, at ¶ 8.

{¶**20**} "[KREIMERS' COUNSEL]: If the Court determines that the Home Solicitation Sales Act is inapplicable, we believe that we have viable claims under — meritorious claims under the Consumer Sales Practices Act for which we are seeking economic damages, noneconomic damages and attorney's fees."[16]

{¶**21**} Thus, the Kreimers elected cancellation if the trial court found Rack Co. liable for violating the HSSA, but damages if the court found the company liable for violating the CSPA, but not the HSSA.

{¶**22**} We have previously held that a party making a claim under the CSPA through a violation of the HSSA could not elect to pursue damages under the CSPA while retaining the right to cancel the contract under the HSSA.[17] But in this case, the Kreimers did not elect to pursue damages *and* retain the right to cancel. Instead, they sought to cancel if the trial court accepted one of their theories of liability, and to receive damages if the trial court did not accept that theory, but accepted any other one. Although this election did not occur until after Rack Co.'s case-in-chief, we hold that any error was harmless. Moreover, the Kreimers were unsuccessful in their HSSA-based claim and received only damages. Accordingly, we overrule Rack Co.'s third assignment of error.

{¶**23**} In its fourth and final assignment of error, Rack Co. argues that the trial court erred by not finding that material deviations from the agreement increased the cost of the lake project. But because the trial court was in the best position to resolve questions of fact and evaluate witness credibility, we must accept its findings of fact so

---

[16] T.p. 164-165.

[17] *Cas. Restoration Servs.*, 2007-Ohio-5131, at ¶ 8.

long as they were supported by competent, credible evidence.[18]  Because they were, we overrule this assignment of error.

**Appeal No. C-100496**

{¶24}   In their sole assignment of error, the Kreimers argue that the trial court erred by not including their paralegal expenses as part of their attorney fees. As with any other challenge to an attorney-fee award, we will not reverse unless the amount awarded was "so high or so low as to shock the conscience."[19]

{¶25}   The trial court awarded the Kreimers $26,675 in attorney fees. This represented 54.25 hours of partner time at $300 per hour, 12 hours of partner travel time at $150 per hour, 41 hours of associate time at $200 per hour, and four hours of associate travel time at $100 per hour. The court, however, declined to award the $4,250 of paralegal expenses, which represented 34 hours at $125 per hour.

{¶26}   Under R.C. 1345.09(F)(2), a "court may award to the prevailing party a reasonable attorney's fee limited to the work reasonably performed if * * * [t]he supplier has knowingly committed an act or practice that violates this chapter." Although we have previously acknowledged a lack of authority regarding paralegal expenses under this statute,[20] the Sixth Appellate District has since awarded such expenses.[21]

{¶27}   Nevertheless, we cannot say that the actual award of $26,675 was so low in relation to $30,925 that it shocks the conscience. Moreover, the trial court specifically found that the paralegal expenses incurred by the Kreimers were unrelated

---

[18] *State v. Gunn*, 1st Dist. No. C-070016, 2007-Ohio-6874, at ¶ 6.

[19] *Bryant v. Walt Sweeney Auto., Inc.*, 1st Dist. Nos. C-010395 and C-010404, 2002-Ohio-2577, at ¶ 37, quoting *Bittner v. Tri-County Toyota* (1991), 58 Ohio St.3d 143, 146, 569 N.E.2d 464.

[20] Id. at ¶ 33.

[21] *Borror v. MarineMax of Ohio, Inc.*, 6th Dist. No. OT-06-010, 2007-Ohio-562.

to their CSPA claims. Accordingly, we overrule the Kreimers' sole assignment of error and affirm the trial court's judgment.

Judgment affirmed.

DINKELACKER, P.J., and HILDEBRANDT and FISCHER, JJ., concur.