# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| DAVID OSTIGNY, | : | APPEAL NO. C-240210 |
| | | TRIAL NO. A-2103730 |
| Plaintiff-Appellant, | : | |
| and | : | *JUDGMENT ENTRY* |
| AMY OSTIGNY, | : | |
| Plaintiff/Counterclaim Defendant-Appellant, | : | |
| vs. | : | |
| CATHERINE FRANCE, | : | |
| Defendant/Counterclaim Plaintiff-Appellee, | : | |
| and | : | |
| CLAIRE FRANCE, et al., | : | |
| Defendants. | : | |

This cause was heard upon the appeal, the record, the briefs, and arguments.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed in part and reversed in part, and the cause is remanded.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs are taxed 50 percent to the appellants and 50 percent to the appellee.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 10/24/2025 per order of the court.**

**By:**_____
　　　　**Administrative Judge**

**[Cite as *Ostigny v. France*, 2025-Ohio-4885.]**

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| DAVID OSTIGNY, | : | APPEAL NO. C-240210 |
| | | TRIAL NO. A-2103730 |
| Plaintiff-Appellant, | : | |
| and | : | |
| | | *O P I N I O N* |
| AMY OSTIGNY, | : | |
| Plaintiff/Counterclaim Defendant- Appellant, | : | |
| vs. | : | |
| CATHERINE FRANCE, | : | |
| Defendant/Counterclaim Plaintiff- Appellee, | : | |
| and | : | |
| CLAIRE FRANCE, et al., | : | |
| Defendants. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: October 24, 2025

*Strauss Troy Co., LPA*, *Alex S. Rodger* and *Alexa E. Wainscott*, for Plaintiff-Appellant David Ostigny and Plaintiff/Counterclaim-Defendant Appellant Amy Ostigny,

*Manley Burke, LPA*, *Sean P. Callan* and *Illana L. Linder*, for Defendant/Counterclaim Plaintiff-Appellee.

**ZAYAS, Presiding Judge.**

**{¶1}** This case concerns a dispute that arose between the parties as to the quality of painting services rendered when defendant/counterclaim plaintiff-appellee Catherine France ("Catherine") hired plaintiff/counterclaim defendant-appellant Amy Ostigny ("Amy") to paint the interior and exterior of her home. The case began when plaintiffs-appellants David and Amy Ostigny ("the Ostignys") filed a complaint against Catherine—and others—for defamation. In response, Catherine filed several counterclaims against Amy, including a claim for several violations of the Consumer Sales Practices Act ("the CSPA").

**{¶2}** Catherine moved for partial summary judgment on the Ostignys' defamation claims in the complaint and on her counterclaim for violating the CSPA by failing to include the notice-of-cancellation language and the accompanying notice-of-cancellation forms as required by R.C. 1345.23(B). The trial court granted summary judgment in Catherine's favor, stating only that it finds the motion "to be well taken." The trial court dismissed the defamation claim against Catherine with prejudice and ordered a damages hearing on Catherine's CSPA counterclaim.

**{¶3}** That same day, the trial court entered a separate order granting Catherine's motion to dismiss, which sought dismissal of the complaint under Civ.R. 37(B). This order dismissed the complaint, "in its entirety, with prejudice," and ordered the Ostignys to pay Catherine reasonable expenses, including attorney fees, related to her attempts to obtain discovery responses. Catherine was ordered to submit evidence of such expenses for the court's consideration.

**{¶4}** Ultimately, after the damages hearing on the CSPA counterclaim (which was held in front of the magistrate) and submission of evidence related to the discovery expenses, the trial court awarded Catherine $181,260.03 as damages on the CSPA

counterclaim ($137,400.03 as trebled damages and $43,860 for attorney fees), as well as $12,581 for attorney fees incurred on account of the discovery violations.

{¶5} The Ostignys now appeal from these determinations, raising two assignments of error. In the first assignment of error, they assert that the trial court erred by adopting the magistrate's decision recommending an award of damages on the CSPA counterclaim "absent any nexus between those asserted damages and the CSPA violation found." In the second assignment of error, they assert that the trial court erred by dismissing their complaint with prejudice under Civ.R. 37 absent the required advance notice. For the reasons explained below, we sustain the first assignment of error and remand the cause to the trial court to enter damages consistent with R.C. 1345.09 on Catherine's CSPA counterclaim and to determine whether, under R.C. 1345.09(H), any of Catherine's other counterclaims may proceed, and we overrule the second assignment of error and affirm all remaining aspects of the trial court's judgment, including the dismissal of the Ostignys' complaint with respect to any claims not disposed of by the summary-judgment ruling.

## I. History of the Case

{¶6} In October 2021, the Ostignys filed a pro se complaint for "Defamation of Reputation and Character *Per Se*" against defendants Catherine, Claire Frances, and Liz McGavran. (Emphasis in original.) The claims were based on negative statements allegedly made by the defendants about the quality of the Ostignys' work after Amy was hired to paint Catherine's house. Catherine is the only defendant relevant to this appeal.[1]

---

[1] Summary judgment was granted on November 29, 2022, in favor of Claire Frances on the claims against her, and on April 21, 2023, in favor of Liz McGavran on the claims against her. The trial court also entered another order on April 21, 2023, with respect to Liz that granted her request for the court to dismiss the Ostignys' complaint with prejudice. Ultimately, an agreement of dismissal with prejudice as to all claims against Liz was entered on August 2, 2023.

**{¶7}** Catherine answered the complaint and filed counterclaims against Amy for breach of contract, unjust enrichment, violation of the CSPA, and negligence. The breach-of-contract claim alleged that Catherine and Amy entered into a contract for Amy to perform interior and exterior painting services and related work on Catherine's house and Amy breached the contract by failing to properly and timely perform the work contracted for. The unjust-enrichment claim alleged that Amy was unjustly enriched by virtue of the money Catherine paid to Amy for work she failed to perform, failed to repair, and/or failed to perform correctly. The CSPA claim alleged that the agreement to paint the house was a consumer transaction and that Amy made certain false representations, warranties, and promises relating to the work she was to perform under the contract and that such conduct was "unfair, deceptive, and/or unconscionable" in violation of R.C. 1345.02 and 1345.03. Lastly, the negligence claim alleged that Amy breached her duties to perform the work in a good and workmanlike manner and in accordance with the standard of care applicable to professional painters.

**{¶8}** The Ostignys filed an answer to the counterclaims, in which they admitted—among other things—that Catherine and Amy entered into a "contractual agreement" and that the document attached as Exhibit A to Catherine's counterclaims was a true and accurate copy "of the contract between the parties."[2]

**{¶9}** Relying on this admission, Catherine filed a motion to amend her answer and counterclaims on the basis that the admission "confirms" the contractual terms between the parties and "now allows additional claims under the Home Sales

---

[2] This document consisted of two pages that presented the parties' names, a date, a start date, a handwritten list of what appears to be the expected tasks to be performed by Amy, an estimate of costs for materials and labor, and a provision that stated, "This is an estimate. Prices and times are subject to change."

Solicitation Act, and, by extension, the Ohio Consumer Sales Practices Act." The proposed amended answer and counterclaims ("the initial amended counterclaims") attached to the motion eliminated the negligence claim and amended the CSPA claim to allege specific deceptive and unconscionable acts by Amy, including (1) failing to complete the contract in a good and workmanlike manner free of defects in material and labor, (2) knowingly breaching the contract with the consumer, (3) failing to comply with the requirements of the Ohio Homes Solicitation Sales Act ("the HSSA"), including failing to provide the consumer with the proper notices-of-cancellation forms and failing to include the statutorily-required language in the contract pertaining to contract cancellation rights, (4) failing to provide a written itemized list of services rendered, (5) failing to provide the consumer with a form that indicates the identity of the supplier and the reasonably anticipated completion date, and (6) stalling or evading obligations.

{¶10} Prior to the court ruling on the motion for leave, the Ostignys answered the initial amended counterclaims, and Catherine filed an amended motion for leave to amend the initial amended counterclaims to correct a "single" typographical error. The amended motion for leave also alleged—in essence—that the Ostignys' answer filed in response to her proposed initial amended counterclaims was a nullity as the court had yet to rule on her initial motion for leave.

{¶11} The trial court ultimately entered an order granting the "Motion for Leave to File an Amended Answer and Counterclaim," and deeming the initial amended counterclaims filed as of October 3, 2022.

{¶12} Catherine then moved for default judgment under Civ.R. 55, claiming that Amy failed to "plead or otherwise defend after properly being served with the Amended Answer and Counterclaim." The Ostignys responded in opposition,

claiming that they only failed to respond "to a typo correction." The motion was referred to a magistrate for resolution.

{¶13} Pending resolution of the default judgment matter by the magistrate, Catherine filed a motion to compel discovery responses. The trial court granted the motion, ordering the Ostignys to answer Catherine's discovery requests within 15 days of the order (the order was entered on January 5, 2023, and the responses were due on January 20, 2023).

{¶14} Prior to the discovery deadline, the magistrate entered a decision denying Catherine's motion for default judgment, finding that the Ostignys answered the initial amended counterclaims, even though the answer was filed before the amendment was accepted by the trial court, and the trial court had yet to rule on the amended motion for leave to correct the typographical error.

{¶15} Shortly after, the trial court entered an order granting Catherine's "Amended Motion for Leave," and deeming the amended counterclaims attached thereto ("the second amended counterclaims") filed as of January 17, 2023. The Ostignys, still proceeding pro se, responded with "no objection" to the second amended counterclaims, "it being just a typo."[3]

{¶16} Three days after the court's discovery deadline, Catherine filed a motion requesting that the court dismiss the Ostignys' complaint pursuant to Civ.R. 37 for failure to comply with the court's discovery order.

{¶17} The Ostignys filed a response in opposition to the motion to dismiss, arguing lack of sufficient notice of dismissal. Notably, the Ostignys were now represented by counsel and requested a "brief extension" to accommodate the

---

[3] The Ostignys later filed another answer to the second amended counterclaims on March 8, 2023, once they were represented by counsel.

7

discovery requests.

**{¶18}** Prior to the court ruling on Catherine's motion to dismiss, Catherine filed a motion for "partial" summary judgment "as to [the] defamation claim(s) against [her], as well as to [her CSPA] Counterclaim against [Amy]." As to the defamation claims, Catherine argued, among other things, that her statements in the Google review at issue were either statements of opinion or were true and were therefore protected. The Google review at issue stated,

> Stay away from Amy and all of her businesses! Amy lies. Amy does not stand by her work. Her people do a terrible job. They are extremely sloppy. They steel [sic]. They don't speak English. Amy only speaks English. Communication is impossible. Amy is a bully and frequently threatens. Large group taking her to court. Many people are extremely upset with her deception and bad job. Stay away!!

**{¶19}** As to her CSPA claim, Catherine argued that the contract between the parties failed to include the notice-of-cancellation language and the accompanying notice-of-cancellation forms required by R.C. 1345.23(B), which violates the HSSA and, by extension, the CSPA as a deceptive act. Therefore, Catherine argued that, because these same acts have previously been determined to constitute a violation of R.C. 1345.02 and 1345.03, she is entitled to "treble actual damages and recovery of her attorney[] fees on account of the painting of the exterior of the house that was done in an unworkmanlike manner." The only evidence attached to the summary-judgment motion was the purported "contract" between the parties.

**{¶20}** The Ostignys responded in opposition to Catherine's motion for partial summary judgment. As to the defamation claim(s), they argued that genuine issues of material fact existed as to whether Catherine's Google review constitutes defamation

8

per se. More specifically, they argued that the statements in the Google review that Amy "steels" [sic] and that "a large group" is taking her to court insinuates that Amy committed a crime of moral turpitude and is being prosecuted for it. As to the CSPA claim, the Ostignys argued that the HSSA was not applicable as, under R.C. 1345.21(A), a contract with a value of less than $25,000 is excluded from the definition of a "home solicitation sale," and therefore the contract at issue is excluded under the HSSA.

{¶21} An affidavit of Amy was attached in support of the Ostignys' response in opposition. However, the affidavit was subsequently stricken by the court at Catherine's request as the affidavit presented evidence that was not disclosed during the discovery period.

{¶22} In reply to the arguments as to the CSPA claim, Catherine argued that the Ostignys misrepresented the law as to value of contracts under the HSSA—asserting that the threshold is actually $25, not $25,000—and therefore moved for sanctions against the Ostignys for "a truly spectacular misstatement of the law." Further, Catherine argued that, because this was the Ostignys' sole basis in opposition to summary judgment on the CSPA claim and their argument failed as a matter of law, she was entitled to summary judgment in her favor on this claim. In reply to the arguments as to the defamation claim, Catherine argued that, because Amy's affidavit was improper, she failed to meet her reciprocal burden in opposition to summary judgment to show that the Google review constituted statements beyond mere opinion.

{¶23} The Ostignys subsequently withdrew their argument related to the value of a contract under the HSSA that was presented in their response in opposition to

summary judgment.[4]

**{¶24}** The trial granted partial summary judgment in favor of Catherine "as it relates to [the Ostignys'] defamation claim and [her CSPA] counterclaim." The entry therefore dismissed the defamation claim against Catherine with prejudice and ordered that a damages hearing be held on her CSPA counterclaim.[5]

**{¶25}** That same day, the trial court entered a separate order granting Catherine's motion to dismiss the complaint under Civ.R. 37(B). The order dismissed the complaint, "in its entirety, with prejudice." The court also ordered the Ostignys to pay Catherine reasonable expenses, including attorney fees, related to her attempts to obtain discovery responses from them. Catherine was ordered to "submit written evidence of such expenses" within 14 days of the entry.

**{¶26}** Shortly after, Catherine submitted an affidavit of her counsel as to her expenses, claiming attorney fees in the amount of $17,307. The Ostignys objected to the calculation of attorney fees, claiming that $11,377.50 of the claimed fees did not relate to attempts to obtain discovery responses.

**{¶27}** The matter of damages on Catherine's CSPA claim was then referred to the magistrate for a hearing. The Ostignys filed a "pre-hearing brief" regarding damages, arguing that damages under the CSPA counterclaim were "limited to those resulting from the single violation upon which liability has been established," which was that the contract failed to include the notice-of-cancellation language and the accompanying notice-of-cancellation forms required by R.C. 1345.23(B).

---

[4] While this withdrawal—in essence—resulted in the Ostignys failing to present any argument in opposition to summary judgment, the only issue in the summary-judgment motion was whether the Ostignys violated the HSSA and CSPA by failing to include the cancellation notice and forms. The Ostignys have not challenged the trial court's finding of such a violation. Therefore, waiver is not applicable here.

[5] This entry did not contain the "no just cause for delay" language under Civ.R. 54(B).

**{¶28}** The damages hearing occurred on August 3, 2023. The magistrate specified at the start of the hearing that the court was

> only reviewing Judge Ghiz's granting of the MSJ as to the CSPA, it is only as to the three-day [cancellation] notice. While there may have been other CSPA mentioned in the complaint, Judge Ghiz ruled on the three-day notice in there at this point. So that's what the Court is considering going forward.

**{¶29}** Further, the magistrate acknowledged that the "workmanship issues" were still outstanding. The magistrate indicated that he did not know how this issue would be resolved, but said, "all I'll focus on today is how the three-day notice not being included goes toward damages, and what those damages actually should be." Mid-hearing, the magistrate stated that he was not considering "workmanship," rather, he was looking at how much the contract was originally for versus "what it is to remediate" the problem.

**{¶30}** Catherine presented the testimony of herself and Fred Harrison in support of her claim of damages. Catherine testified that she paid Amy $9,000 to paint the exterior of her home and the paint "bubbled all over." She called two professional painting companies to look at the house and tell her what was needed to fix the problem. She elected to proceed with Fresh Coat Painting for the repairs. The estimate she received from this company was admitted as Exhibit A. Catherine's testimony was focused on the costs of repairing the paint job.

**{¶31}** Fred Harrison, the owner of Fresh Coat Paint of Cincinnati, testified that he observed some peeling paint, "unevenness of some lines or whatnot," and "areas of just complete paint failure." He said that Exhibit A was the "paint quote" that Fresh Coat provided to Catherine. He said that, in order to "correct" the condition

11

of Catherine's house and bring it to what would be expected of a professional paint job, Catherine would need to pay him $45,800.01. While Harrison testified as to his conclusion on what caused the issue (using a water-based product over an oil-based product), he admitted on cross-examination that this was based on an assumption that the painters used a water-based product on top. He never actually tested the paint.

{¶32} Amy presented the testimony of herself, her husband, and Francisco Gervacio, a painter who worked on painting Catherine's house. Gervacio testified that the bubbling issue was "slight," and just in a couple areas. When asked how much time it would take to repair the issue, he said, "Not much. Probably around a couple hours, like three." He testified that the paint used on the house was the appropriate paint, and there was no problem with the paint as he used "base paint" on the house.

{¶33} Amy testified that she provided Catherine with a $9,000 estimate to paint the exterior of the house. She testified that they scraped, primed, and painted two coats of paint on the exterior of the house. She further testified that they used the same paint "as Fresh Coat put in their estimate." She said it was about an eighth of the whole house that was blistering. When asked why she priced the job at $9,000, she said, "It was directly after COVID, and nobody was allowing painters to work during COVID. No one would let anybody in the house. I needed to keep my really good crew employed. I usually bid about higher, like 20 to 28,000 in that area." When asked her perspective on the $45,000 amount suggested by Fresh Coat Paint, she testified that it was excessive and said the highest price she has ever done in her "many, many years" was $28,000, and it was for a home that was larger than Catherine's home.

{¶34} David Ostigny testified that the blistering on Catherine's home was "a little less than half on one side of the house."

**{¶35}** The parties filed posthearing briefs as to the permissible damages on Catherine's CSPA counterclaim. The Ostignys again argued that damages must be limited to damages connected to the specific act found to be in violation of the CSPA, which was that the contract failed to include the notice-of-cancellation language and the accompanying notice-of-cancellation forms required by R.C. 1345.23(B). Catherine argued that she proved "actual damages in the amount of $45,800.01," entitling her to treble damages of $137,400.03 under R.C. 1345.09. She further asserted,

> If the Court awards [Catherine] the damages she seeks, this case will be over except for a hearing on an attorney[] fee award for violation of the CSPA and discovery sanctions. All of [Catherine]'s remaining counterclaims against [Amy] would be subsumed in this award, and all of [the Ostignys'] claims have already been dismissed.

**{¶36}** On September 21, 2023, the magistrate entered a decision awarding Catherine damages in the amount of $137,400.03. The magistrate said, "In determining the amount of damages that should be trebled[,] this court is not considering the $200 that would have been awarded if the Contract between [Catherine] and [Amy] had been rescinded. Rather, this court must determine the actual damages from the work done by Amy Ostigny." The court then found, based on the testimony presented at the hearing, that Catherine had economic damages in the amount of $48,800.01, which represents the amount needed to strip the existing paint and repaint her house. Interestingly, the magistrate found that Harrison's testimony was "underwhelming" in helping to determine the cost to repaint the house. Instead, the magistrate said that he relied on Amy's testimony as to what she would normally charge to paint a home like Catherine's in order to determine the amount of damages.

13

{¶37} The Ostignys filed objections to the magistrate's decision. They first argued that the magistrate's damages award was improper as it went beyond damages connected to the missing cancellation language and forms, which was the only violation at issue in the court's summary-judgment order. They claimed that

> any assessment of actual damages stemming from the Court's Partial Summary Judgment Order must be tied and limited to proof of damages related to [the Ostignys]' failure to provide the required right-to-cancel language. Should no actual damages have been incurred in relation to this violation, [Catherine] is entitled only to the $200 statutory minimum amount.

{¶38} Next, they argued that Catherine's breach-of-contract claim was still pending since it was not resolved by the partial summary-judgment order, and the magistrate erred in finding otherwise. Further, they argued that the magistrate exceeded the scope of the authority granted by the trial court to determine damages related to the CSPA violation by acting as the trier of fact and determining Catherine's expectancy interest under the contract. Lastly, they argued that the magistrate lacked the authority to sanction them for the discovery violations by excluding or failing to consider evidence they presented at the hearing.

{¶39} After responsive briefing, a hearing was held in front of the trial court on February 21, 2024, to address the expenses related to the discovery issues, as well as the Ostignys' objections to the magistrate's determination of damages related to the CPSA claim.

{¶40} That same day, Catherine submitted "supplemental time entries" in support of her request for attorney fees, claiming fees in the amount of $42,765 related to the CSPA claim and $12,581 related to the discovery violations.

**{¶41}** Ultimately, on March 7, 2024, the trial court entered an order overruling the Ostignys' objections to the magistrate's damages determination on the CSPA claim and awarding Catherine $181,260.03 as damages on the CSPA claim ($137,400.03 as trebled damages and $43,860 for attorney fees), as well as $12,581 for attorney fees incurred on account of the discovery violations. As to the Ostignys' objections, the trial court found that the statutory award of $200 only applied when the complaining party was unable to establish actual economic damages, and that a party may prevail on a CSPA claim, based on expectancy interest under a contract, without ever asserting a breach-of-contract claim.

**{¶42}** The Ostignys now appeal, raising two assignments of error for this court's review. In the first assignment of error, the Ostignys assert, "The trial court erred by adopting the magistrate's recommended award of damages on [Catherine]'s CSPA counterclaim absent any nexus between those asserted damages and the CSPA violation found." In the second assignment of error, the Ostignys assert, "The trial court erred by dismissing the Ostignys' claims with prejudice under Civ.R. 37 absent the required advance notice."

## II. First Assignment of Error

**{¶43}** In the first assignment of error, the Ostignys argue that the trial court misapplied the CSPA as a matter of law as the CSPA "fundamentally requires a causal connection between the CSPA violation and a resulting award of damages." In response, Catherine argues that the trial court's adjudication of her CSPA claim was "grounded in both legal precedent and the statutory framework" as the damages award was based on "a broader pattern of deceptive practices," and not solely based on a technical violation of the HSSA.

**{¶44}** "The trial court's application of a measure of damages presents a legal

question subject to a de novo review." *ABV Corp. v. Cantor*, 2023-Ohio-3363, ¶ 49 (8th Dist.), citing *Younker v. Hayes*, 2018-Ohio-835, ¶ 13 (9th Dist.), and *Fleischer v. George*, 2010-Ohio-3941, ¶ 18 (9th Dist.).

### A. The CSPA and the HSSA Generally

### 1. Relevant Provisions of the CSPA

{¶45} A "consumer transaction" is defined to include "a sale . . . or other transfer of an item of goods, a service, . . . or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." R.C. 1345.01(A). A supplier is the person "engaged in the business of effecting or soliciting consumer transactions," whereas a consumer is the person "who engages in a consumer transaction with the supplier." R.C. 3145.01(C) and (D).

{¶46} Under R.C. 1345.02(A), a supplier is prohibited from committing an "unfair or deceptive act or practice in connection with a consumer transaction." If the supplier commits an unfair or deceptive act or practice, the supplier violates R.C. 1345.02, "whether it occurs before, during, or after the transaction." *Id.*

{¶47} Under R.C. 1345.03(A), a supplier is prohibited from committing an "unconscionable act or practice in connection with a consumer transaction." If the supplier commits an unconscionable act or practice, the supplier violates R.C. 1345.03, "whether it occurs before, during, or after the transaction." *Id.*

{¶48} For a violation of either section, "a consumer has a cause of action and is entitled to relief as" set forth in R.C. 1345.09. Relevant to our purposes here, "the consumer may, in an individual action, rescind the transaction **or** recover the consumer's actual economic damages plus an amount not exceeding five thousand dollars in noneconomic damages." R.C. 1345.09(A). (Emphasis added.) "Actual

economic damages" is defined as "direct, incidental, or consequential pecuniary losses *resulting from a violation* of Chapter 1345 of the Revised Code . . . ." (Emphasis added.) R.C. 1345.09(G).

**{¶49}** Further, where the violation was an act or practice determined by a court of this state to violate either section, and the act or practice is "committed after the decision containing the determination has been made available for public inspection under division (A)(3) of section 1345.05 of the Revised Code, the consumer may rescind the transaction or recover . . . three times the amount of the consumer's actual economic damages or two hundred dollars, whichever is greater, plus an amount not exceeding five thousand dollars in noneconomic damages . . . ." R.C. 1345.09(B).

### 2. Relevant Provisions of the HSSA

**{¶50}** A "home solicitation sale" is "a sale of consumer goods or services in which the seller or a person acting for the seller engages in a personal solicitation of the sale at a residence of the buyer, including solicitations in response to or following an invitation by the buyer, and the buyer's agreement or offer to purchase is there given to the seller or a person acting for the seller, or in which the buyer's agreement or offer to purchase is made at a place other than the seller's place of business." R.C. 1345.21(A). "Consumer goods or services" means "goods or services purchased . . . for personal, family, or household purposes . . . ." R.C. 1345.21(E).

**{¶51}** "In addition to any right otherwise to revoke an offer, the buyer has the right to cancel a home solicitation sale until midnight of the third business day after the day on which the buyer signs an agreement or offer to purchase." R.C. 1345.22(A). "[W]here a home solicitation sale requires a seller to provide services, the seller shall not commence performance of such services during the time in which the buyer may

cancel." R.C. 1345.22(B).

**{¶52}** "Every home solicitation sale shall be evidenced by a written agreement or offer to purchase in the same language as that principally used in the oral sales presentation . . . ." R.C. 1345.23(A). Among other requirements, the written agreement must be left with the buyer and must clearly and conspicuously include the language, "You, the buyer, may cancel this transaction at any time prior to midnight of the third business day after the date of this transaction. See attached notice of cancellation for an explanation of this right." R.C. 1345.23(B)(1). The seller must attach a "completed form, in duplicate, captioned 'notice of cancellation,'" that must contain the language set forth in R.C. 1345.23(B)(2). (R.C. 1345.23(B)(1) and (2) will be hereinafter referred to as "the HSSA notice provisions.").

**{¶53}** "Until the seller has complied with [R.C. 1345.23(A) and (B)] the buyer may cancel the home solicitation sale . . . ." R.C. 1345.23(C). "The three-day period prescribed by [R.C. 1345.22] begins to run from the time the seller complied with" R.C. 1345.23(A) and (B).

**{¶54}** "Failure to comply with sections 1345.21 to 1345.27 of the Revised Code constitutes a deceptive act or practice in connection with a consumer transaction in violation of section 1345.02 of the Revised Code." R.C. 1345.28.

### 3. *The Interplay Between Remedies Under the HSSA and the CSPA*

**{¶55}** As indicated above, "[w]hen a supplier has committed an unfair or deceptive act in connection with a consumer transaction, the consumer may 'rescind the transaction or recover the consumer's actual economic damages plus an amount not exceeding five thousand dollars in noneconomic damages.'" *J & D Rack Co., Inc. v. Kreimer*, 2011-Ohio-2358, ¶ 15 (1st Dist.), quoting R.C. 1345.09(A). When seeking damages under the CSPA, a consumer must elect between recission or damages. *See,*

*e.g., Rosenfield v. Tombragel*, 1996 Ohio App. LEXIS 5885 (1st Dist. Dec. 31, 1996).

**{¶56}** "In addition, when the unfair or deceptive act is a violation of the [HSSA], the consumer may elect to cancel the transaction." *J & D* at ¶ 15, citing R.C. 1345.22 and 1345.23. Courts have similarly held that where a buyer has elected to cancel the contract under the HSSA, the buyer cannot also pursue a claim for damages under the CSPA. *See, e.g., Garber v. STS Concrete Co., L.L.C.*, 2013-Ohio-2700, ¶ 25 (8th Dist.); *Smith v. Sack*, 2016-Ohio-763, ¶ 26 (11th Dist.); *but see Santos v. Buckeye 5, LLC*, 2023-Ohio-3602, ¶ 50-51, 56 (7th Dist.) (concluding that the election of remedy reading does not extend to the remedy of cancellation under the HSSA; rather, the remedy of cancellation under the HSSA is in addition to other remedies under the CSPA).

**{¶57}** "Although recission [under the CSPA] must occur 'before any substantial change in condition of the subject of the consumer transaction,' courts have allowed cancellation [under the HSSA] even after substantial performance." *J & D* at ¶ 15, citing *McGill v. Image Scapes, LLC*, 2010-Ohio-6246 (9th Dist.), and *Kamposek v. Johnson*, 2005-Ohio-344 (11th Dist.); *but see Santos* at ¶ 45 ("[T]o the extent other courts have held that [R.C. 1345.23(D)(4)(a)] affords a homeowner a refund of all money paid under the HSSA contract, regardless of work satisfactorily performed, we disagree.").

**{¶58}** "Although a party may file suit under different theories of recovery, the party must elect its remedy before trial." *J & D*, 2011-Ohio-2358, at ¶ 15 (1st Dist.), citing *Casualty Restoration Servs., LLC v. Jenkins*, 2007-Ohio-5131, ¶ 8 (1st Dist.).

### B. Law and Analysis

**{¶59}** Here, there is no dispute that the transaction between the parties was a home solicitation sale under the HSSA, that the written agreement between the parties

failed to comply with the HSSA notice provisions, or that such a violation of the HSSA was also a violation of the CSPA under 1345.02, as provided in R.C. 1345.28. Rather, the dispute pertains to the damages available to Catherine under R.C. 1345.09 for the violation of the CSPA.

{¶60} As an initial matter, Catherine specifically elected the remedy of damages under R.C. 1345.09 in her CSPA counterclaim and argued for damages under R.C. 1345.09 in her motion for summary judgment. Thus, neither recission under the CSPA nor cancellation under the HSSA was ever at issue here.

{¶61} Notably, when moving for summary judgment, Catherine only argued that she was entitled to summary judgment on the CSPA counterclaim on the basis that Amy failed to comply with the HSSA notice provisions. While she did assert in one sentence at the end of her motion that this violation entitled her to treble actual damages "on account of the painting of the exterior of the house that was done in an unworkmanlike manner," she never moved for summary judgment on the issue of whether Amy actually violated the CSPA on the basis that the work performed under the contract was not done in an unworkmanlike manner.

{¶62} In *Scott v. First Choice Auto Clinic, Inc.*, 2023-Ohio-3855 (10th Dist.), the court addressed a very similar issue wherein a consumer was attempting to recover damages for poor workmanship under the CSPA after only proving technical violations of the CSPA, and never proving a violation of the CSPA based on the alleged poor workmanship. In *Scott*, a dispute arose between the consumer and the supplier from an agreement for the supplier to restore the consumer's car. *Id.* at ¶ 2-11. The consumer sued the supplier for breach of contract and violations of the CSPA, among other things. *Id.* at ¶ 12. The consumer moved for summary judgment on certain violations of the CSPA. *Id.* at ¶ 13. The motion was unopposed, and the court granted

20

the motion. *Id.* The trial court found that the supplier had committed three deceptive acts or practices that violated the CSPA: (1) failing to provide the consumer with a form depicting the work to be performed, the estimated completion date, and the anticipated costs, (2) failing to obtain authorization from the consumer for the anticipated costs of additional, unforeseen, but necessary repairs or services, and (3) allowing eight weeks to elapse after accepting money for services. *Id.* A trial on damages and the consumer's remaining claims was then held before a magistrate. *Id.* at ¶ 14. The magistrate recommended that the supplier be found liable on the consumer's remaining claims, including breach of contract, and found that the consumer was entitled to actual damages in the amount of $16,598, trebled to $49,794, on the CSPA violations. *Id.* at ¶ 14. The magistrate further recommended an award of damages to the consumer based on out-of-pocket expenses incurred as a result of "the negligent workmanship that breached the parties' contract" in the amount of $9,409. *Id.* The trial court entered judgment in the consumer's favor in the amounts set forth in the magistrate's decision. *Id.* at ¶ 15.

{¶63} On appeal, the supplier argued, among other things, that the trial court erred in awarding treble damages under the CSPA. *Id.* at ¶ 31. The appellate court agreed. *Id.* The court said that "to recover actual economic damages, a consumer must show pecuniary losses *because of* a violation of the CSPA." (Emphasis added.) *Id.* at ¶ 38. The court then said,

> Here, [the consumer] encountered problems due to [the
> supplier's] violations of CSPA: he felt 'stuck' with [the supplier], he
> received invoices from [the supplier] after work was completed, and he
> had a tough time finding a new repair shop. . . . Although the magistrate
> characterized these problems as 'financial[] harm[s],' [the consumer]

did not present any evidence as to how the problems caused him any pecuniary loss. . . .

On appeal, [the consumer] argues he demonstrated at trial the work [the supplier] performed had no value, and therefore, his actual economic damages under the CSPA amounted to $16,598. In short, [the consumer] claims he incurred actual economic damages by paying $16,598 for valueless work. However, to recover actual economic damages under the CSPA, [the consumer] had to show that *a violation of the CSPA* caused him pecuniary loss. R.C. 1345.09(G). [The supplier]'s work had no value due to poor workmanship, so [the consumer] sustained pecuniary loss due to poor workmanship. Importantly, [the consumer] did not prove a CSPA violation based on poor workmanship. [The consumer] only proved more technical violations of the CSPA: failing to provide a cost estimate or anticipated date of completion, failing to obtain authorization for services, and allowing excessive delay. Consequently, [the consumer] failed to show that a violation of the CSPA caused him to pay $16,598 for valueless work, so he cannot recover actual economic damages under the CSPA.

(Emphasis in original.) *Id.* at ¶ 38-39.

**{¶64}** Thus, a consumer must show actual economic damages that resulted from the *proven* CSPA violation. This conclusion is supported by a review of the history of R.C. 1345.09, and how the Ohio Supreme Court interpreted a prior version of the statute in *Whitaker v. M.T. Auto., Inc.*, 2006-Ohio-5481.

**{¶65}** In *Whitaker*, the Ohio Supreme Court addressed what damages were available under former R.C. 1345.09. *Id.* at ¶ 1. At the time, R.C. 1345.09(G) did not

exist. *See* 2007 Amendment Notes to R.C. 1345.09. Instead, the statute simply provided that a consumer could "recover his damages." *See Whitaker* at ¶ 13. The Ohio Supreme Court first noted that the statute was amended in 1978 to remove the word "actual" from the previous versions use of the term "actual damages." *Id.*

> The title of the act [that removed the word actual] stated that the intent was 'to prevent unfair, deceptive, and unconscionable acts and practices, to provide strong and effective remedies, both public and private, to assure that consumers will recover *any damages* caused by such acts and practices, and to eliminate any monetary incentives for suppliers to engage in such acts and practices.'

(Emphasis in original.) *Id.*

{¶66} Consequently, the Ohio Supreme Court addressed the meaning of the word "damages" when used without modification. *Id.* at ¶ 14. The court said that use of the word damages alone, without a modifier such as "compensatory," "actual," "consequential," or "punitive," "is an inclusive term embracing the panoply of legally recognized pecuniary relief." *Id.*, citing *Rice v. CertainTeed Corp.*, 84 Ohio St.3d 417, 419 (1999). Therefore, the court held that, "in an action brought under the CSPA, all forms of compensatory relief, including noneconomic damages, are included within the unrestricted term 'damages' under R.C. 1345.09(A)." *Id.* at ¶ 15.

{¶67} The following year, R.C. 1345.09 was amended as follows:

> [I]n (A) and (B), added 'plus an amount not exceeding five thousand dollars in noneconomic damages'; in (A), inserted 'actual economic'; in (B), inserted 'economic' following 'consumer's actual'; added (G) and (H).

*See* 2007 Amendment Notes to R.C. 1345.09.

23

**{¶68}** Thus, the General Assembly added modifiers to the statute to limit the recovery of damages. *See id.* Of note, the General Assembly limited the recovery of damages to "actual economic damages" and specifically defined this term in the newly added provision (G), as "direct, incidental, or consequential pecuniary losses *resulting from* a violation of" the CSPA. (Emphasis added.) *See id.*; R.C. 1345.09(G).

**{¶69}** In *Whitaker*, the Ohio Supreme Court also addressed use of term "actual damages" under the trebled damages provision in the prior version of the statute. *Whitaker*, 2006-Ohio-5481, at ¶ 18. The court defined "actual damages" as ""real, substantial and just damages, or the amount awarded to a complainant in compensation for *his actual and real loss or injury*."" (Emphasis added.) *Id.*, quoting *Crow v. Fred Martin Motor Co.*, 2003-Ohio-1293, ¶ 32 (9th Dist.).

**{¶70}** The General Assembly's addition of the term "actual" back into the statute in the amendment the following year, in addition to the addition of the language "resulting from" in the definition of actual economic damages in provision (G) suggests that the General Assembly intended for damages to be awarded under R.C. 1345.09 for real loss or injury suffered as a result of a violation of the CSPA.

**{¶71}** For example, in *ABV Corp.*, 2023-Ohio-3363 (8th Dist.), a dispute arose between a consumer and a supplier regarding payment by the consumer for a sewer conversion performed by the supplier. *Id.* at ¶ 2. The supplier filed suit against the consumer for breach of contract based on the consumer's failure to pay the balance of the cost for the sewer conversion, and the consumer filed a counterclaim against the supplier for a violation of the CSPA. *Id.* at ¶ 3. The matter ultimately proceeded to a jury trial, and the jury found in favor of the supplier on the breach of contract claim but also found in favor of the consumer on the CSPA violation. *Id.* at ¶ 4. The jury awarded the supplier the unpaid amount for the sewer conversion but only awarded

the consumer statutory damages of $200. *Id.* On appeal, the consumer argued, among other things, that the trial court erred in not allowing any amount found due and owing from the consumer to be recoverable as damages under the CSPA and erred in failing to treble the consumer's actual damages under the CSPA, which encompassed the amount found due and owing. *Id.* at ¶ 5. The proven violation of the CSPA was for failing to obtain authorization from the consumer for the anticipated costs of additional, unforeseen, but necessary repairs. *Id.* at ¶ 45. The consumer argued that the amount due and owing for the conversion was their actual economic damages for the violation. *Id.* at ¶ 51. The court rejected this assertion, finding no case law to support the claim that the consumer's actual economic damages for the proven violation is the remaining balance they owed, "where the work had been performed to their satisfaction." *Id.* at ¶ 52. Thus, the court found that the consumer failed to prove any real loss or injury resulting from the violation of the CSPA. *See id.* at ¶ 53.

{¶72} Similarly, in *Sterling Constr., Inc. v. Alkire*, 2017-Ohio-7213 (12th Dist.), a dispute arose between a consumer and a supplier regarding payment by the consumer for home renovations. *Id.* at ¶ 2. The supplier filed suit against the consumer for breach of contract, and the consumer counterclaimed alleging breach of contract and multiple violations of the CSPA. *Id.* The trial court ultimately found that the supplier had failed to establish a breach by the consumer but found that the supplier had committed two CSPA violations, entitling the consumer to recover $400 in statutory damages. *Id.* at ¶ 3. The proven violations of the CSPA related to the supplier's failure to provide the consumer with a written estimate and a receipt. *Id.* at ¶ 9. Ultimately, on appeal, the court of appeals agreed with the trial court that the consumer had not suffered any actual economic damages resulting from the two

violations where the record revealed that the consumer paid the supplier $40,000 for the renovations but received $44,000 worth of work." *Id.* at ¶ 13. In other words, where the consumer received a windfall of at least $4,000, the court held that the consumer did not suffer any actual pecuniary loss as a result of the CSPA violations. *Id.*

{¶73} Thus, a consumer must show that he or she suffered a real loss or injury resulting from the proven violation of the CSPA in order to recover damages beyond the statutory $200.

{¶74} In this case, the trial court relied on *Green Maple Ents. v. Forester*, 2021-Ohio-4640 (7th Dist.), to find that the magistrate properly awarded damages to Catherine based on her expectancy interest under the contract. However, in *Green Maple*, the supplier was found to have breached the contract by failing to perform in a timely and workmanlike manner and violated the CSPA in multiple ways, including by performing poor workmanship under the contract to the extent that it was unconscionable conduct under the CSPA. *See id.* at ¶ 6-8, 14. Consequently, expectancy damages were appropriate in that case as such an award constituted the actual economic damages suffered by the consumer under R.C. 1345.09(G) for the *proven* violations of the CSPA. *Green Maple* is not applicable in this case because Catherine did not move for summary judgment on the basis that Amy violated the CSPA based on poor workmanship.

{¶75} Catherine argues that courts have routinely held that the measure of damages for a CSPA claim involving deception is the consumer's expectancy interest. However, none of the cited cases support the assertion that Catherine is entitled to an award of damages for her expectancy interest under the contract in this case. *See Averback v. Montrose Ford, Inc.*, 2019-Ohio-373 (9th Dist.) (holding that the

consumer failed to present sufficient evidence of actual economic damages based on a dealership's violation of the CSPA for failing to appropriately disclose a defect that was repaired prior to the sale of the vehicle to the consumer, *despite the fact that the asserted damages arose from the CSPA violation*, where the consumer only presented evidence of damages consistent with reliance damages, i.e., out-of-pocket expenses in performing the contract, which were inappropriate where the consumer never sought to rescind the contract and where the consumer had already traded the vehicle in to another dealership); *Warman v. Select Auto*, 2024-Ohio-366 (2d Dist.) (similarly holding—where a dealership was found to have violated the CSPA by failing to inform the consumer that the vehicle sold to the consumer had unrepaired or improperly-repaired structural damage at the time of the sale—that the trial court erred in awarding damages consistent with reliance damages when the consumer never sought to rescind the contract); *Fleischer*, 2010-Ohio-3941 (9th Dist.) (agreeing with the trial court's award of damages where the damages were expressly based on the "actual damages that [would] compensate [the consumer] for the monetary injuries he sustained because of" the *multiple, proven* violations of the CSPA); *Papp v. J & W Roofing & General Contracting*, 1999 Ohio App. LEXIS 6042 (2d Dist. Dec. 17, 1999) (affirming a trial court's award of damages for the cost of repair based on the violation of the HSSA notice provisions *solely on a procedural basis*, holding that the supplier failed to meets its reciprocal burden on summary judgment to show that repair damages were inappropriate where there was "no allegation, nor support from the record in any of [the supplier]'s motions or responses in the trial court that the damages requested by [the consumer] were inappropriate.").

{¶76} Because Catherine never moved for summary judgment on the basis that Amy violated the CSPA based on poor workmanship, she failed to prove that she

suffered any real loss or injury under the CSPA as a result of poor workmanship. *See Scott*, 2023-Ohio-3855, at ¶ 38-39 (10th Dist.). Further, she never presented any evidence of actual pecuniary loss or injury resulting from Amy's failure to follow the HSSA notice provisions, the only *proven* violation of the CSPA. In the absence of proof of actual pecuniary loss or injury on the proven violation of the CSPA, Catherine was only entitled to the $200 statutory award under R.C. 1345.09(B). *See id.* at ¶ 42.

{¶77} Therefore, we sustain the first assignment of error and remand the cause for the trial court to enter damages consistent with this decision on Catherine's CSPA counterclaim and to determine whether, under R.C. 1345.09(H), any of Catherine's other counterclaims may proceed.[6]

### III. Second Assignment of Error

{¶78} In the second assignment of error, the Ostignys argue that (1) the trial court did not provide legally sufficient notice of its intent to dismiss their claims, with prejudice, under Civ.R. 41(B)(1) for the failure to comply with the discovery requests, and (2) the trial court abused its discretion in dismissing their claims as a discovery sanction under the circumstances of the case as there had been no "progressive warnings or sanctions for this particular conduct at the time of the dismissal."

{¶79} In response, Catherine argues that (1) the trial court acted within its discretion in dismissing the Ostignys' claims as a discovery sanction due to their "repeated noncompliance and willful evasion of their obligations," and (2) addressing this issue would "serve no purpose" as the defamation claims were also dismissed on substantive grounds in the summary-judgment order, which remains unchallenged.

---

[6] R.C. 1345.09(H) provides, "Nothing in this section shall preclude a consumer from also proceeding with a cause of action under any other theory of law."

### A. The Assignment of Error is not Moot

{¶80} Catherine suggests that this court need not address this issue as the defamation claims were also disposed of in the trial court's grant of summary judgment in her favor.

{¶81} In the complaint, the Ostignys' claims for defamation were based on statements made online, as well as statements made to third parties. Catherine moved for summary judgment as to the Ostignys' "defamation claim(s)." The main substantive argument of the motion addressed only the Google review posted online. However, in the "summary of the case" section, Catherine argued that the allegations in the complaint concerning third parties were not a "potential source" of defamation as the Ostignys "never produced any evidence or attempted to clarify what [Catherine] purportedly said, precisely when [Catherine] allegedly made these statements, or how those statements damaged Plaintiffs." The trial court's entry granting summary judgment states that summary judgment is granted as to the defamation "claim." That same day, the trial court entered the order granting Catherine's motion to dismiss the complaint under Civ.R. 37(B). Thus, it appears that the trial court may have granted summary judgment as to the claim based on the Google review, but dismissed the remaining claims based on statements to third parties under Civ.R. 37(B), given that Catherine's argument on these claims pertained to no evidence ever being produced.

{¶82} To the extent that the dismissal entry was meant to cover the defamation claims not addressed by the summary judgment, the assignment of error is not moot. Therefore, we proceed to address the argument raised.

### B. Law and Analysis

{¶83} "The decision to dismiss a case for repeated and willful discovery violations is consigned to the discretion of the trial court." *Goodpaster v. Banker*,

29

2016-Ohio-1077, ¶ 13 (1st Dist.), citing *Quonset Hut, Inc. v. Ford Motor Co.*, 80 Ohio St.3d 46, 47 (1997). "A trial court does not abuse its discretion by ordering dismissal . . . where the record shows that the conduct of the sanctioned party was 'so negligent, irresponsible, contumacious or dilatory as to outweigh the policy that disposition of litigation should be upon its merits.'" *Id.*, citing *Evans v. Smith*, 75 Ohio App.3d 160, 163 (1st Dist. 1991).

### 1. *Notice*

**{¶84}** The Ostignys first argue that they did not receive sufficient notice of the trial court's intent to dismiss their claims with prejudice.

**{¶85}** "The Supreme Court of Ohio has held that the 'notice requirement of Civ.R. 41(B)(1) applies to *all* dismissals with prejudice, including those entered pursuant to [Civ.R. 37(B)] for failure to comply with discovery orders.'" (Emphasis in original.) *Kidwell v. White Picket Properties, LLC*, 2020-Ohio-202, ¶ 19 (10th Dist.), citing *Ohio Furniture Co. v. Mindala*, 22 Ohio St.3d 99, 101 (1986). "'A dismissal on the merits is a harsh remedy that calls for the due process guarantee of prior notice.'" *Id.*, citing *Ohio Furniture* at 101. "Thus, the court in *Ohio Furniture Co.* held that Civ.R. 41(B) and Civ.R. 37(B) 'should be read *in pari materia* with regard to dismissals with prejudice.'" *Id.*, citing *Ohio Furniture* at 101.

**{¶86}** "'For purposes of Civ.R. 41(B)(1), counsel has notice of an impending dismissal with prejudice for failure to comply with a discovery order when counsel has been informed that dismissal is a possibility and has had a reasonable opportunity to defend against dismissal.'" *Id.* at ¶ 20, citing *Quonset Hut*, 80 Ohio St.3d at 49. "Indeed, the purpose of notice under Civ.R. 41(B) is to provide the party in default an opportunity to explain the default or to correct it, or to explain why the case should not be dismissed with prejudice." (Cleaned up.) *Id.*, citing *Quonset* at 38.

30

**{¶87}** Here, in the motion to compel, Catherine moved the trial court to compel the Ostignys to respond to her discovery requests within 14 days or else dismiss their complaint *with prejudice*. The trial court granted the motion to compel on January 5, 2023, and ordered the Ostignys to produce complete answers to the discovery requests on or before January 20, 2023. The trial court further warned the Ostignys that the "[f]ailure to do so will result in dismissal of [the] Complaint against Catherine France."

**{¶88}** The Ostignys failed to respond to discovery by the court's deadline, so Catherine then moved the court to dismiss the Ostignys' complaint. Notably, the Ostignys—through counsel—filed a response in opposition to the motion to dismiss, which specifically argued that, if the court were to grant the motion to dismiss, it should be without prejudice since the court's order compelling discovery did not state that the dismissal would be with prejudice. The Ostignys did not offer any explanation for their failure to respond to the discovery requests. Instead, they requested a "brief extension" to comply with discovery now that they had obtained counsel. Yet, even though the court did not grant the dismissal for over two months after the Ostignys made this request, there is no indication that the Ostignys complied with the discovery requests in the interim period or offered an explanation for the failure to comply.

**{¶89}** Based on the foregoing, the Ostignys had sufficient notice of the court's intent to dismiss their claims with prejudice as the Ostignys were informed that dismissal was a possibility and provided with a reasonable opportunity to defend against the dismissal.

### 2. *Dismissal was not an Abuse of Discretion*

**{¶90}** The Ostignys next argue that imposition of the discovery sanction under the circumstances was an abuse of discretion where there was "no progressive

warnings or sanctions for this particular conduct at the time of dismissal."

**{¶91}** In support of this assertion, they point to *Soc. Natl. Bank v. NCON Corp.*, 1997 Ohio App. LEXIS 356 (6th Dist. Feb. 7, 1997). However, this case does not provide any support for the Ostignys' assertion. Rather, the court in *Soc. Natl. Bank* said that once a violation has been shown, "the burden shifts to the noncomplying party to demonstrate that they have acted in good faith in failing to comply." *Id.* at 12. While the court did make the statement that the case before it was "not a case of a violation of Civ.R. 37 and heavy-handed dismissal as the first sanction," this was because the noncomplying party had repeatedly appeared before the court and offered the explanation that he was in the process of obtaining new counsel—after his previous counsel withdrew—and that discovery would be completed once new counsel was obtained. *Id.* at 6, 12. Nevertheless, the court concluded that the trial court's ultimate dismissal of the party's claims with prejudice was not an abuse of discretion where the discovery requests were still outstanding almost a year later, and the court warned the party of the consequences of failing to comply and gave them additional time to comply thereafter. *Id.* at 6-7, 12.

**{¶92}** Here, the Ostignys did not respond to the motion to compel and did not offer any good faith basis for their failure to answer the discovery requests when they filed a response in opposition to the motion to dismiss. Rather, they simply suggested a "brief extension" to respond now that they had retained counsel. Yet, over two months went by before the court entered the dismissal, and there is no indication that the Ostignys provided any discovery responses in the interim, nor offered any good-faith basis for their failure to respond.

**{¶93}** In *Quonset*, 80 Ohio St.3d at 49, the Ohio Supreme Court held that a trial court did not abuse its discretion in dismissing a complaint with prejudice where

the party had notice and an ample opportunity to explain its default and/or correct its default, yet it did not, and there was no reason for the trial court to expect that one more warning would have prompted the party to comply with the discovery order it had ignored for over four months, not to mention the contempt order that had been outstanding for over a month.

{¶94} Here, in the affidavit attached to Catherine's motion to compel, her counsel averred that the discovery requests were served on the Ostignys on March 8, 2022. The affidavit then detailed counsel's extra-judicial attempts to obtain adequate responses to the discovery requests from the Ostignys, and claimed that, as of December 14, 2022, no responses had been received to the outstanding requests. The motion to compel was filed on December 14, 2022. Yet, despite the court's subsequent order compelling discovery, the Ostignys still had not responded to discovery, nor provided any reason for the court to believe that one more warning would have prompted them to comply with the discovery order at the time that the court granted the dismissal on April 21, 2023. At that point, the discovery requests had been outstanding for over one year.

{¶95} For these reasons, we hold that the trial court did not abuse its discretion in dismissing, with prejudice, any defamation claims not addressed by the summary judgment as a sanction under Civ.R. 37.

### IV. Conclusion

{¶96} For the reasons previously set forth, we sustain the first assignment of error and remand the cause to the trial court to enter damages consistent with this decision and the law on Catherine's CSPA counterclaim and to determine whether, under R.C. 1345.09(H), any of Catherine's other counterclaims may proceed, and overrule the second assignment of error and affirm the trial court's judgment in all

other respects, including dismissing the Ostignys' claims in the complaint, to the extent any claims were not disposed of by the summary-judgment ruling.

Judgment affirmed in part, reversed in part, and cause remanded.

**NESTOR** and **MOORE, JJ.,** concur.