**[Cite as *Calloway v. McKenna*, 2023-Ohio-3130.]**

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| MICHELE CALLOWAY, Individually and as the administratrix of the Estate of James T. Calloway, | : | APPEAL NO. C-220508<br>TRIAL NO. A-2003537 |
| | : | |
| Plaintiff-Appellant, | : | *O P I N I O N.* |
| vs. | : | |
| PETER J. MCKENNA, M.D., | : | |
| and | : | |
| CINCINNATI INSTITUTE OF PLASTIC SURGERY, LLC, | : | |
| Defendants-Appellees. | | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: September 6, 2023

*Cooper Elliot, Charles H. Cooper, Jr., Jeffrey T. Kenney* and *Kaela King,* for Plaintiff-Appellant,

*Lindhorst & Dreidame Co., LPA, Michael F. Lyon, Cullen P. Rooney, Bricker Graydon LLP., Bradley D. McPeek* and *Kellie A. Kulka,* for Defendants-Appellees.

**KINSLEY, Judge.**

{¶1}   Plaintiff-appellant Michele Calloway appeals, both on her own behalf and as administrator of the estate of her deceased husband James Calloway ("the Estate"), from the judgment of the trial court entered on the jury's verdict in favor of defendants-appellees Dr. Peter J. McKenna and Cincinnati Institute of Plastic Surgery, LLC, ("CIPS"). The Estate brought medical-malpractice and lack-of-informed-consent claims against Dr. McKenna and CIPS when James died after he underwent liposuction surgery. Following a jury trial, the jury found in favor of Dr. McKenna and CIPS.

{¶2}   The Estate raises three assignments of error on appeal: (1) the trial court erred by issuing the conclusion section of the jury instructions, which improperly required the Estate to prove that Dr. McKenna, rather than an undisclosed risk, caused James's death in relation to the informed-consent claim; (2) the trial court erred in issuing Interrogatory No. 5, which included the same causation issue; and (3) the jury's verdict was against the manifest wight of the evidence.

{¶3}   The problem with the Estate's first two assignments of error is that the Estate not only failed to object to the jury instructions and interrogatory it now challenges, but actually agreed to the language the trial court used. That limits our review to plain error, which we fail to find in this case. In addition, having reviewed the record thoroughly, we hold that the jury's verdict was supported by the weight of the evidence. Therefore, we affirm the trial court's judgment.

## I.   *Factual and Procedural Background*

{**¶4**}    In March 2019, James Calloway met with Dr. Brarens, a podiatrist, to discuss pain that he was having in his foot and ankle.  In April 2019, James decided to have foot surgery, which was scheduled for May 30, 2019.

{**¶5**}    On May 29, 2019, James met with Dr. Peter McKenna, a plastic surgeon at CIPS, to discuss having a liposuction procedure while he was off of work for the ankle surgery.  James informed Dr. McKenna that his ankle surgery was scheduled for the next day and that his ankle would be nonweightbearing for eight weeks.  Dr. McKenna evaluated James for his risk of deep vein thrombosis ("DVT") and pulmonary embolism ("PE") by using a self-evaluation worksheet.  Dr. McKenna concluded that James had a moderate risk for DVT, but his calculation did not include the fact that James would be in a plaster cast at the time of the liposuction procedure.  Dr. McKenna did not share his specific assessment of his DVT risk with James, but did provide him with a pamphlet that mentioned DVT as a possible risk.  The liposuction procedure was scheduled for June 20, 2019.

{**¶6**}    On May 30, 2019, James had ankle surgery and was instructed not to put any weight on that leg for eight weeks.  He was also instructed to take aspirin as an anticoagulant to reduce his chances of DVT during this time of limited mobility.  A plaster cast was placed on his leg on June 5, and he utilized a scooter to get around.  On June 10, Dr. McKenna's office instructed James to stop taking aspirin in preparation for the upcoming liposuction procedure.

{**¶7**}    On June 20, 2019, James had a successful liposuction surgery.  James had follow-up appointments with Dr. McKenna on June 24 and Dr. Brarens on June 26, which both went well.  James had also scheduled a three-part Cool-Sculpting

procedure with Dr. McKenna. The first appointment was set for July 1, and that also went well.

{¶8} On July 8, James began to experience congestion. He went to his primary care physician's office on July 11 and met with the nurse practitioner, who instructed him to go to the emergency room immediately. After a delay of several hours, James eventually went to Bethesda North Hospital and was informed that he had developed blood clots and needed surgery. On July 12, James had surgery to remove the blood clots, which was initially successful until later complications arose. Unfortunately, James passed away on July 14. Following his death, the coroner's office determined his cause of death as complications from a DVT/PE blood clot.

{¶9} The Estate sued Dr. McKenna and CIPS for medical malpractice and failure to obtain informed consent. During a two-week jury trial, the trial court and counsel for both parties discussed jury instructions and interrogatories multiple times. Eventually, all parties came to an agreement as to what would be read and presented to the jury at the conclusion of the trial. The trial court drafted the interrogatories and the conclusion section of the jury instructions, while the Estate drafted the instructions for the failure-to-obtain-informed-consent section of the instructions.

{¶10} The jury returned a verdict in favor of Dr. McKenna and CIPS. Ultimately, the jury found that Dr. McKenna was negligent by not adequately explaining to James his correct risk level and that he failed to obtain informed consent from James. However, the jury also found that the lack of informed consent was not the proximate cause of James's death, that Dr. McKenna was not negligent for not postponing the liposuction surgery until James had completely recovered from the ankle surgery, and that James himself was negligent, although his negligence was not

the proximate cause of his death. The jury also assigned zero percent fault to both Dr. McKenna and James. Following the verdict, the Estate filed a motion requesting that a judgment be entered for the Estate and a damages trial be scheduled, which the trial court denied.

## II. Jury Instructions

{¶11} In its first assignment of error, the Estate argues that the conclusion section of the jury instructions was erroneous. More specifically, the Estate faults the trial court for telling the jury that Dr. McKenna must have proximately caused James's death to find a lack of informed consent, when it is the undisclosed risk that must proximately cause death. However, the Estate failed to object to this section of the jury instructions and actually agreed with the language drafted by the trial court.

{¶12} Arguments that were not raised below are generally subject to a plain error review. "A 'plain error' is obvious and prejudicial although neither objected to nor affirmatively waived which, if permitted, would have a material adverse [e]ffect on the character and public confidence in judicial proceedings." *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 436 N.E.2d 1001 (1982).

{¶13} Both parties agree that the plain error standard applies in this case, but the Estate encourages us to utilize the plain error standard applicable to criminal cases rather than the plain error standard for civil cases. We decline that invitation. This is a civil matter, and the civil plain error standard applies.

{¶14} In a civil case, "A party's failure to object forfeits review for all but plain error, which appellate courts will invoke when the error is of such seriousness that it affects 'the basic fairness, integrity, or public reputation of the judicial process.' " *In re I.W.*, 1st Dist. Hamilton No. C-180095, 2019-Ohio-1515, ¶ 14, citing *McNeil v.*

5

*Kingsley*, 178 Ohio App.3d 674, 2008-Ohio-5536, 899 N.E.2d 1054, ¶ 24 (3d Dist.). "However, invocation of the plain-error doctrine in civil cases is rare and is only employed by the court in instances in which 'the error complained of "would have a material adverse [e]ffect on the character and public confidence in judicial proceedings." ' " *Id.* at ¶ 14, citing *Reichert v. Ingersoll*, 18 Ohio St.3d 220, 223, 480 N.E.2d 802 (1985), quoting *Schade* at 209.

{¶15} In this case, the Estate alleged two claims: medical malpractice and lack of informed consent. In order to succeed on a claim for medical negligence, a claimant must prove the "existence of a standard of care within the medical community, a breach of that standard of care by the defendants, and proximate cause between the medical negligence and the injury sustained." *Siuda v. Howard,* 1st Dist. Hamilton Nos. C-000656 and C-000687, 2002-Ohio-2292, ¶ 105. The elements of a successful claim for failure to obtain informed consent are "(1) the physician fails to disclose to the patient and discuss the material risks and dangers inherently and potentially involved with respect to the proposed therapy, if any; (2) the unrevealed risks and dangers which should have been disclosed by the physician actually materialize and are the proximate cause of the patient's injury; and (3) a reasonable person in the patient's position would have decided against the therapy had the material risks and dangers inherent and incidental to treatment been disclosed prior to the therapy." *White v. Durrani,* 2021-Ohio-566, 168 N.E.3d 597, ¶ 21 (1st Dist.). The two causes of action have slightly different causation requirements.

{¶16} The trial court wrote the conclusion section of the jury instructions and attempted to combine both claims. By doing this, the trial court intertwined the different proximate cause standards needed to satisfy each. The trial court

6

acknowledged during discussions with the attorneys for the parties that the instruction was confusing before giving the instruction to the jury. Ultimately, neither party objected, and both parties agreed to the instruction as written. The trial court also asked both parties if the instruction comported with the law, and both parties agreed that it did.

{¶17} In the failure-to-obtain-informed-consent section of the jury instructions, the jury was provided with the correct proximate cause definition for that claim. The inconsistencies between the proximate cause instructions are insignificant. Both instructions carried similar meanings, and the jury was provided with a correct instruction before the conclusion section. The jury instructions were also followed by interrogatories, which broke down each element in the claims.

{¶18} As a result, the conclusion section of the jury instructions in this case is not so prejudicial that we can say it had a material, adverse effect on public confidence in the proceedings, and therefore, we cannot say it constituted plain error. In fact, both sides collaborated with the trial court and had in-depth conversations regarding the jury instructions. Although the trial court prepared this portion, both parties discussed this specific instruction with the trial court and agreed that it stated the law correctly and could be given to the jury. By failing to timely raise an objection to these instructions, the Estate denied the trial court the opportunity to effectively identify and correct the alleged error. We conclude that no exceptional circumstance exists, and we decline to label as plainly erroneous the conclusion section of the jury instruction that was not met with an appropriate objection. The first assignment of error is overruled.

### III.    *Interrogatory No. 5*

{¶19} In the second assignment of error, the Estate argues that Interrogatory No. 5 misstated the law and confused the jury. Again, the Estate failed to object to the use of this interrogatory. Accordingly, we review this assignment of error under the plain error standard. *See In re I.W.*, 1st Dist. Hamilton No. C-180095, 2019-Ohio-1515, at ¶ 14.

{¶20} Specifically, the Estate argues that the proximate cause requirement necessary to prove failure to obtain informed consent was not properly explained to the jury and stated incorrectly in Interrogatory No. 5. "The elements of a cause of action for a physician's failure to obtain informed consent are: * * * (2) the unrevealed risks and dangers which should have been disclosed by the physician actually materialize and are the proximate cause of the patient's injury * * *." *White v. Leimbach*, 131 Ohio St.3d 21, 2011-Ohio-6238, 959 N.E.2d 1033, ¶ 28, quoting *Nickell v. Gonzalez*, 17 Ohio St.3d 136, 139, 477 N.E.2d 1145 (1985).

{¶21} We agree that Interrogatory No. 5 does not precisely comport with the proximate cause element for informed consent, in that it does not specifically state that the undisclosed risk materialized and was the proximate cause of James's death. Although the interrogatory could have been clearer and more precise, it does not place a new burden on the Estate as it suggests. Interrogatory No. 5 asked if "Dr. McKenna's failure to obtain informed consent caused the death of Mr. Calloway?" The jury answered, "No." Also, the jury answered in Interrogatory No. 8 that zero percent fault should be apportioned to Dr. McKenna, indicating that they did not believe that Dr. McKenna had any fault in the death of James.

{¶22} While the interrogatories could have been more specific, it is not apparent that they prejudiced the Estate. The Estate failed to object to Interrogatory

No. 5 at trial, collaborated with both the trial court and opposing counsel on the wording, and agreed to it being given to the jury. Therefore, we conclude that no exceptional circumstance exists, and we decline to label as plainly erroneous Interrogatory No. 5, which was not met with an appropriate objection. The second assignment of error is overruled.

### IV. Manifest Weight of the Evidence

{¶23} In the Estate's last assignment of error, it argues that the jury's verdict in favor of Dr. McKenna was against the manifest weight of the evidence. The Estate asserts that because the jury answered "Yes" to Interrogatory No. 4, finding that Dr. McKenna failed to obtain informed consent, it was entitled to a verdict in its favor.[1]

> When addressing a challenge to the manifest weight of the evidence, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed, and a new trial ordered. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20. In weighing the evidence, we must presume that the findings of the trier of fact are correct, and if the evidence is susceptible of more than one construction, as a

---

[1] Dr. McKenna titles the section in his brief responding to this argument as "The Interrogatory No. 4 'Gotcha' Argument." Dr. McKenna also makes other discourteous remarks in his brief toward opposing counsel which are not well-taken. While litigation can be contentious, it is expected that all parties treat each other with professionalism and respect, both in writing and in court.

> reviewing court, we must give it that interpretation that
> is consistent with the verdict or finding and judgment.
>
> *See id.* at ¶ 21.

*Maddali v. Haverkamp*, 1st Dist. Hamilton No. C-210358, 2022-Ohio-3826, ¶ 18.

{¶24} In this case, the jury heard evidence presented by both sides concerning James's risk of developing DVT/PE and death. The jury heard from medical experts, the coroner who conducted James's autopsy, James's doctors, and his wife Michele. The Estate presented testimony from Dr. Frank Madda, a board-certified plastic surgeon. He testified that James was only told that he had a "moderate risk" and that his risk "wasn't judged as it should have been, and the patient was not made aware of the risk that he was undertaking." Dr. Madda also testified that he "honestly believe[d] that Mr. Calloway was not a reasonable person." The Estate also called Dr. Karen Looman, chief pathologist at the coroner's office in Cincinnati, to testify. Dr. Looman testified that "Mr. Calloway, developed blood clots, most likely in his legs. Because after his surgery for his ankle, he couldn't walk around a lot, * * * So he developed blood clots in his legs that broke off and went through his heart and got stuck in his lungs, and mostly on the right side."

{¶25} The jury had the opportunity to weigh the evidence presented to them by each party and consider the credibility of each witness. In Interrogatory No. 4, the jury found that the Estate proved that Dr. McKenna failed to obtain informed consent by not explaining to James his correct risk level. However, in Interrogatory No. 5, the jury also found that although Dr. McKenna failed to give a correct risk level, that was not the proximate cause of James's death. The jury also found in Interrogatory No. 6,

"that James Calloway was negligent." Likewise, the jury assigned both Dr. McKenna and James zero percent fault.

**{¶26}** Given this volume of evidence, there was ample support for the jury's determination that Dr. McKenna did not engage in medical negligence and that his failure to adequately advise James of the risks of surgery did not proximately cause his death. Therefore, the jury's verdict in favor of Dr. McKenna and CIPS was not against the manifest weight of the evidence. The third assignment of error is overruled.

### V.    Conclusion

**{¶27}** For the reasons set forth in this opinion, the judgment of the court of common pleas is hereby affirmed.

Judgment affirmed.

**BERGERON, P.J.,** and **BOCK, J.,** concur.

Please note:
The court has recorded its own entry on the date of the release of this opinion.