IN THE COURT OF APPEALS

FIRST APPELLATE DISTRICT OF OHIO

HAMILTON COUNTY

|  |  |  |
|---|---|---|
| EDGAR T. RAGOUZIS, et al., | : | |
| Appellants, | : | APPEAL NO. C-240624<br>TRIAL NO. A 2204283 |
| | : | |
| - vs - | : | |
| | : | <u>JUDGMENT ENTRY</u> |
| THE MADISON HOUSE | : | |
| CONDOMINIUM OWNERS | | |
| ASSOCIATION, INC., et al., | : | |
| Appellees. | | |

This cause was heard upon the appeal, the record, and the briefs.

The judgment of the trial court is affirmed for the reasons set forth in the Opinion filed this date.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs are taxed under App.R. 24.

The court further orders that 1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and 2) the mandate be sent to the trial court for execution under App.R. 27.

**To the Clerk:**
**Enter upon the journal of the court on January 30, 2026 per order of the court.**

**By: Robert A. Hendrickson, Presiding Judge**

**By: Mike Powell, Judge**

**By: Juergen A. Waldick, Judge**

[Cite as *Ragouzis v. Madison House Condominium Owners Assn.*, 2026-Ohio-290.]

IN THE COURT OF APPEALS

FIRST APPELLATE DISTRICT OF OHIO

HAMILTON COUNTY


| | | |
|---|---|---|
| EDGAR T. RAGOUZIS, et al., | : | |
| Appellants, | : | CASE NO. C-240624 |
| | : | |
| - vs - | : | O P I N I O N |
| | : | |
| THE MADISON HOUSE CONDOMINIUM OWNERS ASSOCIATION, INC., et al., | : | |
| | : | |
| Appellees. | | |


CIVIL APPEAL FROM HAMILTON COUNTY COURT OF COMMON PLEAS
Case No. A 2204283


Edward J. Collins, for appellant.

Williams & Strohm, LLC, and Nicholas R. Barnes and Brad J. Terman, for appellee, The Madison House Condominium Owners' Association, Inc.

J.T. Riker Co. L.P.A., and J. Timothy Riker, for appellee, Michael Patterson d/b/a/ SRES, Inc.


## O P I N I O N


**M. POWELL, J.**

{¶ 1} Appellant, Edgar Ragouzis, appeals a decision of the Hamilton County Court of Common Pleas dismissing his complaint with prejudice as a sanction for Ragouzis' failure to follow the court's orders.

{¶ 2} This appeal arises from a decision in a case involving complex litigation with a large number of parties, claims, and counterclaims. Our discussion below is limited to the factual and procedural history relevant to this appeal.

{¶ 3} Ragouzis owns two units in the Madison House, a 175-unit high-rise building located in Hyde Park, Ohio ("the Condominiums"). On November 21, 2022, Ragouzis and six other condominium owners filed a 22-count complaint against a multitude of parties[1]. The essence of the complaint was that The Madison House Condominium Owners Association ("the Association") was failing to properly maintain and repair the Condominiums and a conspiracy and a conflict of interest existed in transactions. As relevant to this appeal, the complaint included claims against appellees, the Association, and Michael Patterson, a professional engineer doing business as SRES, Inc.

{¶ 4} The Association filed a counterclaim in the case, alleging Ragouzis and the other plaintiffs had interfered with the Association's vendors and contractors and had engaged in frivolous conduct in filing and pursuing their claims. The counterclaim also included a claim for breach of a restrictive covenant alleging that Ragouzis had a substantial and well-documented history of harassing and wrongfully interfering with Association contractors and vendors. The Association alleged that because of the interference, vendors had refused to do work and had threatened not to do work or to quit working. The Association indicated it was sometimes unable to find another vendor to

_____

1. The number of plaintiffs in the case has fluctuated as another plaintiff was added, then plaintiffs began settling their claims.

- 2 -

perform the work. The counterclaims alleged that Ragouzis' conduct rose to the level of nuisance, and that he had engaged in repeated trespass and forced entry into areas of the Condominiums that he was not entitled to access.

**HVAC Leak and the April 11, 2024 Conference**

{¶ 5} During the course of the case, problems arose when the HVAC system in the Condominiums needed repairs. At a case management conference on April 11, 2024, counsel for the Association explained that in mid-March, a leak was discovered in the HVAC piping in the unit below Ragouzis' units. Counsel explained that Ragouzis was placing various conditions on the Association's attempts to gain access to his units to repair the problem. The Association was able to gain access for an initial inspection but was having repeated difficulty getting continued access to perform the necessary additional inspections and repair work. Counsel explained that, despite the fact that the Association had an easement to perform repairs in the unit upon 24-hours notice, Ragouzis was placing conditions on access and creating a great deal of difficulty with scheduling.

{¶ 6} Counsel informed the court that the current situation was related to the Association's counterclaim alleging the plaintiffs had interfered with the ability of the Association to perform its maintenance and repair obligations. Counsel asked the court if it would prefer to facilitate access or if the Association should file a motion for a temporary restraining order. The court stated that the parties should be able to "talk about and solve what seems like a pretty simple problem."

{¶ 7} When the court asked Ragouzis why he was not allowing the Association to repair the leak, Ragouzis initially responded that he had over one million dollars in art and the Association had not provided a certificate of liability. When the court explained that the Association did not have to provide that, Ragouzis argued that his insurance

company required certain movers and that he take the art to certain places. The Association explained that the companies performing the work were insured and qualified. Ragouzis then argued that he believed there was asbestos in the wall. The Association and court assured Ragouzis that if asbestos was encountered, it would be dealt with in a manner that the law requires.

{¶ 8} After listening to Ragouzis' various arguments, the court instructed, "Mr. Ragouzis, let them into your house to fix the leak, all right?" The court told Ragouzis that the Association had an easement to his units to do repairs and Ragouzis was not "going to stand here and interfere with it so somebody below you has their place fill up with water." The court told Ragouzis the Association was going to fully fix the issue and advised the parties that if there was any dispute about the situation, to call and set up a hearing and the court would deal with it right away. The court warned Ragouzis, "For now, you will let them in and stop impeding the ability of the Association to do its job. I don't see how you can simultaneously complain they don't do their job but then make it impossible for them to do their job."

### Ragouzis' Motion for a Protective Order

{¶ 9} The record indicates that after some difficulty, Ragouzis eventually let the Association into his units on April 16 to perform an initial inspection. A little over a month later, on May 26, Ragouzis filed a motion for a protective order for his property. He alleged that the Association needed to do repairs to the HVAC water lines in his wall on May 29th or 30th. Ragouzis stated that he had previously advised them regarding the concerns for his artwork, that the Association must assume the risk, and asked for "renumeration" to fully restore any areas damaged during the repair.

{¶ 10} In response, the Association argued that Ragouzis could not dictate how or when the Association performs work and he could not deny access to contractors to make

- 4 -

repairs. The Association explained that it sent Ragouzis a notice on May 16 that a contractor was available to perform repairs on either May 22 & 23, or, if those dates did not work, on May 29 & 30. Ragouzis did not respond and on May 20, the Association sent an email requesting confirmation. Instead of responding with an agreeable date, Ragouzis filed the motion for a protective order, then sent an email stating he had placed a "legal notice" on his door prohibiting the Association and contractor access to perform repairs.

{¶ 11} The Association's response further reiterated that this issue had been discussed at the April status conference and Ragouzis was again ignoring the Association's attempts to perform the repairs. The trial court found the request for a protective order not well-taken and denied Ragouzis' motion.

**Preliminary Injunction Motion**

{¶ 12} The Association attempted to schedule a hearing to address the ongoing problems scheduling the HVAC repairs. Eventually on June 26, a status conference was set for July 2 to discuss issues pertaining to the building repairs. However, Ragouzis filed a request to continue the status conference, stating that he was not available until after July 22. The Association responded and argued that the request was yet another attempt to control and delay the case.

{¶ 13} Eventually, on July 10, 2024, the Association filed a request for a preliminary injunction against Ragouzis. The motion alleged that despite the court's verbal order at the April conference, Ragouzis repeatedly refused to allow the Association access for repairs. The motion documented the refusal to allow access on May 22 & 23 or May 29 & 30 discussed above.

{¶ 14} The motion further alleged that after the denial of his motion for a protective order, Ragouzis still continued to deny access. Repairs were scheduled for June 26 and 27. However, Ragouzis stated that June 26 would not work. Instead of allowing the

Association to perform the needed repairs, Ragouzis registered a formal complaint with the City of Cincinnati Buildings & Inspections Department ("the city") and gave inspectors access to his units on June 26. He then followed up the city inspector's visit with an email, relaying his understanding that the city would be issuing orders, demanding to receive those orders by July 17, 2024, and threatening to add the city back into the lawsuit if it did not meet his demands. As a result of the city's inspection of Ragouzis' units, the city placed code violation orders on the Association related to the HVAC piping that the Association had been attempting to repair.

{¶ 15} The Association reiterated that it needed immediate access to Ragouzis' units to perform repairs to restore cooling to 18 units on the "03 stack" which could not happen until the HVAC piping was repaired. The Association indicated it had received numerous complaints from residents, most of whom are elderly, about their inability to cool their units. The Association further indicated it needed access to comply with the city orders and to meet its maintenance obligations under the Revised Code and the Condominium's governing documents. The motion also stated that Ragouzis continued to harass the Association's vendors, contractors, and attorneys, and attached copies of emails sent to support this argument. Finally, the motion alleged that Ragouzis continued to videorecord contractors working on the Condominium's' common elements.

{¶ 16} The motion requested the court order Ragouzis to (1) immediately allow the Association and its contractors access to his units for HVAC repairs without interference; (2) allow the Association access for inspections and repairs as necessary during the case; and (3) refrain from approaching, interacting with, recording or otherwise interfering with Association contractors and vendors during the case; and (4) refrain from engaging in behavior on Condominium property that constitutes a nuisance under the governing documents.

**Preliminary Injunction Hearing**

{¶ 17} At the July 24 hearing on the preliminary injunction motion, the Association explained that after the April status conference discussion, the contractor was finally able to access Ragouzis' units on April 16. The purpose of this visit was exploratory: to locate the leak and determine what was necessary to fix it. The second step required access to the unit to perform repairs, which would take about two days. The Association reached out to Ragouzis to schedule the repairs but did not hear back. Eventually, the Association sent a notice scheduling the repairs for May 22 & 23, with May 29 & 30 as an alternative dates. Ragouzis did not respond, so the Association planned to proceed on the 29th, but Ragouzis filed the motion for a protective order on May 26.

{¶ 18} After the denial of Ragouzis protection order, the Association then tried to schedule for June 26 & 27. On the 25th, Ragouzis stated he was not available on the 26th and instead called the city. The Association explained that after this second step was completed, a third step would be needed to close the walls. The Association explained that the constant cancelling and rescheduling was affecting its relationship with the contractor performing the piping repairs.

{¶ 19} The Association argued that Ragouzis' behavior was part of a bigger issue that included interference with vendors. The attorney indicated that at the initial case management conference on March 6, Ragouzis was told not to videorecord and watch vendors who were doing work in the common elements, but on May 20, Ragouzis had a videographer walking through the common areas recording the workers on a façade project.

{¶ 20} The court questioned counsel, asking if the Association had made efforts to alleviate Ragouzis' concerns. Counsel indicated that Ragouzis initially asked for details on how the work was to be done and the details were promptly explained to him. However,

Ragouzis continued to assert an "evolution of demands" regarding the repairs. Ragouzis demanded to know who was going to be in the unit, attempted to restrict access to certain workers, demanded that work be performed within a specific time frame, and only on certain days and times, but did not provide agreeable dates/times. Ragouzis demanded identification, qualifications and insurance information, and demanded a payment of $100. The attorney indicated that the conditions changed every time the Association attempted to gain access to the units.

**Preliminary Injunction Order**

{¶ 21} On July 30, 2024, the trial court granted the preliminary injunction and specifically ordered Ragouzis to allow the Association and contractor access on July 31 and August 1, and subsequently as needed on 24-hours notice. The preliminary injunction further prohibited Ragouzis from approaching, interacting with, recording, and otherwise interfering with any Association contractor or vendor and enjoined Ragouzis from conducting future inspections of Condominium property without seven-days notice or court permission.

**Show Cause Motion**

{¶ 22} On August 19, less than three weeks after the preliminary injunction was issued, the Association filed a motion to show cause, alleging that Ragouzis had denied access to his units on August 15 and was also scraping and manipulating the pipes to perform his own inspection.

{¶ 23} The motion explained that in an e-mail on August 1, Ragouzis was given notice of repairs on August 5. He said he was unavailable and tried to push the repairs to August 6. After some back-and-forth, Ragouzis failed to confirm he would allow access, but when contractors arrived on August 5, he eventually allowed access. The contractor was able to complete the HVAC repairs and the repairs passed a city inspection. The next

steps were insulation and another inspection before walls could be closed.

{¶ 24} On August 13, Ragouzis was given notice of an August 15 date for completion of the repairs, but when workers arrived at 8:30 am and knocked on the door, Ragouzis did not answer. When a maintenance worker called, Ragouzis stated that he would come back at 11:00 a.m. Workers returned at 11:00, but Ragouzis did not answer or provide access. When the worker again called, Ragouzis stated that he would not allow workers to access his units because he was meeting with city inspectors that afternoon. Ragouzis had again contacted city inspectors and insisted they inspect the HVAC piping and other items in the building.

{¶ 25} City inspectors did not find any of the issues Ragouzis complained of on August 15. However, Ragouzis sent the city emails, stating that he had not seen orders, asking what the city was going to do and stating, "I am watching." After the city inspection, Ragouzis stated that he would "not be letting the Association in to insulate the HVAC piping or close the walls in the open shaft." Once again, the Association stated that without access to Ragouzis' units, it was not able to complete the insulation and wall repairs, and it could not turn the repaired riser on and restore air conditioning.

{¶ 26} The show cause motion also alleged that on August 14, 2024, after the Association gave Ragouzis notice of the scheduled repairs, the Association received complaints that debris was entering unit 1403 in the Condominium building. This unit is directly below Ragouzis' unit and on the same HVAC chase that was being repaired. When a maintenance worker responded to the complaint and went to the hole in the wall along the 03 chase, he heard noises from above and observed Ragouzis scraping and manipulating the HVAC piping and other areas of the wall for over 30 minutes.

{¶ 27} The Association's motion further indicated that Ragouzis was observed communicating with workers on the façade project on August 15 and that Ragouzis had

threatened the Association's counsel in an email. The motion requested that the court dismiss all of Ragouzis' claims in the complaint with prejudice because of these violations. Patterson filed a motion and memorandum, joining in the Association's show cause motion. Patterson's motion also requested dismissal of Ragouzis' claims.

**Show Cause Hearing**

{¶ 28} The court issued a show cause order on August 26 and set a hearing for August 30. At the hearing, the Association indicated that Ragouzis had denied access for HVAC repairs after the required notice and had indicated he was not going to allow the Association any additional access for repairs. The Association explained that the owners on the "03 stack" continue to suffer from the heat because the Association cannot turn on the riser until the pipes inside Ragouzis' unit are insulated. The Association further explained that it could not comply with the city orders without access to Ragouzis' units and had to file an appeal of the city's orders to avoid a sanction because they were unable to address the issue.

{¶ 29} As discussed in the motion, the Association also explained that Ragouzis was observed scraping and manipulating the concrete and pipes inside the walls for over three hours, causing debris to enter the units below. Issues regarding Ragouzis' email harassment of attorneys and parties was also presented.

{¶ 30} The Association stated that nothing had changed after the show cause motions were filed, or after the show cause order was issued, and no further work was able to be completed. Instead, after the show cause motion was filed, Ragouzis contacted a professional who conducted an inspection of the HVAC chases on August 25. Ragouzis did not give notice of this inspection to the Association or court as required. The Association stated that it was requesting Ragouzis' complaint be dismissed with prejudice

- 10 -

under Civ.R. 41 as a sanction for his failure to comply with the court's orders.

{¶ 31} The court addressed Ragouzis, who did not dispute that he had refused access to his units. Instead, Ragouzis attempted to put the refusal into context, arguing that his refusal was just for that day. He admitted that he talked to workers but characterized the interactions differently. He further admitted to using a selfie-stick to take pictures inside the walls and to sending emails and texts. When questioned why he did not allow the Association to access his units after the show cause motion was filed, or after it was granted, Ragouzis stated that he still had not let the Association into his units because a hearing had been scheduled and he felt it would be handled by the court then.

{¶ 32} After hearing from all the parties, the court stated that it had "not heard one iota of recalcitrance or responsibility or acknowledgement from Ragouzis that his actions were impeding getting air conditioning to a tower of people." The court found Ragouzis' actions "reprehensible" and reiterated that Ragouzis had no right to manage the Condominium repairs or to dictate how they were done. The court concluded that there was no dispute on the basic facts and no question that Ragouzis had acted contrary to the court's orders. The court reiterated that it was extremely disappointing and frustrating that Ragouzis showed no remorse, did not apologize or accept responsibility, and there was no indication Ragouzis would comply. The court took the matter of what sanction to impose under advisement.

### Order Dismissing Claims

{¶ 33} On September 5, 2024, the court issued a decision and entry finding Ragouzis in contempt and dismissing his complaint with prejudice. The court's decision summarized the events discussed above. The court found that at the hearing, Ragouzis acknowledged that although proper notice had been given, he refused to permit the Association access on August 15. The court further found that after the motion seeking

dismissal of his claims and the show cause order were issued, rather than act affirmatively to correct his violation of the court's order and allow access, Ragouzis decided to wait until the hearing.

{¶ 34} The court found by clear and convincing evidence that Ragouzis failed to follow the court's orders and that the appropriate remedy for Ragouzis "egregious and outrageous behavior" was dismissal of his claims with prejudice. The court stated that Ragouzis had "delayed and impeded repairs to the Madison House for months despite this Court's repeated directives, up to and including the issuance of a preliminary injunction." The trial court continued, stating that "[b]y the time August 15, 2024 rolled around, there can be no question that Mr. Ragouzis was well aware of what was required and expected of him with respect to permitting access to his units." The court found Ragouzis "was cautioned and warned repeatedly" but knowingly and willfully chose not to comply, knowing his actions allowed a dangerous fire hazard that threatened the safety of hundreds of other residents." The court further found that Ragouzis "persisted in making threatening and demeaning statements to counsel."

{¶ 35} The court indicated it had been "exceedingly patient with Mr. Ragouzis, but he has repeatedly refused to comply with the court's directives or comport himself in an appropriate manner" and placing the safety of other residents at risk by refusing to allow access was "the last straw." The court indicated that although Ragouzis stated that he would have allowed the Association inside to complete work after his refusal on August 14, the court "simply does not buy it" and Ragouzis lacks credibility.

{¶ 36} With regard to dismissal of the complaint, the court stated that its authority to impose a sanction of dismissal was found in Civ.R. 41(B)(1). The court indicated Ragouzis was on actual notice that the Association was requesting dismissal as a sanction because the show cause motion explicitly requested dismissal of the complaint.

The court found Ragouzis received additional notice when Patterson filed a motion and also expressly requested dismissal of Ragouzis claims with prejudice.

{¶ 37} The trial court found that despite receiving both filings requesting dismissal, Ragouzis came to the hearing "having done nothing whatsoever to cure his contempt." The court stated that Ragouzis had an opportunity to defend his actions at the August 30, 2024 hearing. The court concluded that Ragouzis' "persistent, flagrant and substantial disregard for the court's rules and orders clearly warrant dismissal" and ordered the claims dismissed with prejudice.

{¶ 38} Ragouzis now appeals the trial court's decision to dismiss his claims with prejudice. He raises the following three assignments of error for our review.

{¶ 39} THE TRIAL COURT ERRED IN IMPOSING THE SEVERE SANCTION OF DISMISSAL WITHOUT ANY PROGRESSIVE DISCIPLINARY PROCEDURES

{¶ 40} THE COURT'S FAILURE TO CONSIDER APPELLANT'S PRO SE STATUS[ ] RESULTED IN UNFAIR PREJUDICE.

{¶ 41} THE TRIAL COURT ERRED AND VIOLATED MR. RAGOUZIS' DUE PROCESS RIGHTS BY DISMISSING HIS CLAIMS WITH PREJUDICE AND WITHOUT PROVIDING ADEQUATE NOTICE THAT DISMISSAL WAS A POSSIBLE SANCTION FOR CONTEMPT AND WITHOUT AFFORDING HIM A REASONABLE OPPORTUNITY TO RESPOND TO THE ASSOCIATION'S MOTION TO SHOW CAUSE.

### Dismissal Under Civ.R. 41(B)(1)

{¶ 42} As mentioned above, the trial court dismissed Ragouzis' complaint under Civ.R. 41(B). This rule provides that "where the plaintiff fails to . . . comply with . . . any court order, the court may, after notice to the plaintiff's counsel, dismiss an action or claim." Civ.R. 41(B)(1); *Quonset Hut Inc. v. Ford Motor Co*., 80 Ohio St.3d 46, 48 (1997).

{¶ 43} Because the decision to dismiss a case pursuant to Civ.R. 41(B)(1) is within

the sound discretion of the trial court, an appellate court reviews the decision under an abuse of discretion standard. *Quonset Hut* at 47. "While our review of the trial court's judgment is deferential, a heighten[ed] abuse-of-discretion standard of review applies to a trial court's decision to dismiss a case with prejudice for the failure to comply with a court's order." *Five Star Fin. Corp. v. Merchs. Bank & Trust Co.*, 2013-Ohio-3097, ¶ 10 (1st Dist.), citing *Jones v. Hartranft*,1997 Ohio 203, ¶ 17.

{¶ 44} Notwithstanding the heightened scrutiny, it is not an abuse of discretion for a trial court to order dismissal where the conduct of the sanctioned party was "'so negligent, irresponsible, contumacious or dilatory as to outweigh the policy that disposition of litigation should be upon its merits.'" *Goodpaster v. Banker*, 2016-Ohio-1077, ¶ 13 (1st Dist.), quoting *Evans v. Smith*, 75 Ohio App.3d 160, 163 (1st Dist. 1991); *Ostigny v. France*, 2025-Ohio-4885, ¶ 83 (1st Dist.); *Quonset Hut* at 48. "A trial court may look to the entire history of the case when making such a ruling." *Five Star Fin. Corp.* at ¶ 10.

### Lack of Progressive Disciplinary Procedures

{¶ 45} In his first assignment of error, Ragouzis argues that the court erred in imposing the severe sanction of dismissal without any progressive disciplinary procedures. In this assignment of error, he argues both that the sanction was too severe and that the court should have first imposed lesser sanctions.

{¶ 46} Ragouzis argues that he attended August 30 hearing and provided explanation for his alleged non-compliance with the court's order. He contends he only denied access on August 15 because city officials had scheduled an inspection for the same day. He further argues that he made it clear he was willing to grant access after that date, but the Association did not contact him and moved to hold him in contempt. He

further argues that the court wrongly concluded that he violated the injunction order in multiple ways, because he had legal access to the common areas where the alleged inspections occurred and his interaction with workers was a casual conversation with a worker he had once known and had offered water to drink.

{¶ 47} Ragouzis does not deny that he was aware of the court's orders in the preliminary injunction. Likewise, he does not deny that he denied access to his unit on August 15, that he spoke with workers, or that he conducted an investigation on his own. Instead, he characterizes the events and interactions differently. Our review of the facts of this case supports the trial court's determination that Ragouzis' conduct was egregious and outrageous.

{¶ 48} As mentioned above, the issues with gaining access to Ragouzis units in order to perform the HVAC system repairs began in March. Ragouzis was admonished by the court at the status hearing in April and told in no uncertain terms to allow access to his units. Ragouzis allowed access on one occasion, but when the Association tried to schedule repairs in May, Ragouzis failed to respond to the requests and instead filed a protective order, alleging essentially the same issues the court had addressed at the April status conference. Ragouzis denied access and placed a notice on his door prohibiting entrance. After denial of the protective order, Ragouzis refused to allow access for repairs scheduled on June 25 and 26, and instead, called the city who issued orders for essentially the same work the Association had been attempting to complete.

{¶ 49} After the court granted the preliminary injunction, Ragouzis continued to create problems with the repair scheduled for August 5 by stating he was unavailable and failing to confirm he would allow access. Although he eventually allowed access on August 5, Ragouzis did not answer the door for scheduled repairs at 8:00 on August 15, then told a maintenance worker he would allow access at 11:00, but did not do so.

Instead, Ragouzis met with city inspectors that afternoon, insisting they perform an inspection and issue orders.

{¶ 50} In addition, after the preliminary injunction was granted prohibiting contact with workers and independent inspections without prior approval, Ragouzis was observed scraping and manipulating the pipes and was observed communicating with workers on the façade project. Moreover, after the show cause order was issued, Ragouzis had an inspection performed by an independent party.

{¶ 51} Ragouzis' actions during this time not only inconvenienced the Association and its vendors, but also the residents of the building, as the air conditioning to the units on the 03 stack was impacted. As noted above, many of these residents were elderly and complained to the Association. Moreover, the open walls created a fire hazard to the building residents. Given the facts of this case, the trial court did not abuse its discretion in dismissing Ragouzis' claims pursuant to Civ.R. 41 as his conduct was so negligent, irresponsible, contumacious or dilatory as to outweigh the policy that disposition of litigation should be upon its merits. See *Ostigny*, 2025-Ohio-4885, at ¶ 83; *Quonset Hut*, 80 Ohio St.3d at 48.

{¶ 52} Ragouzis also argues that the court should have considered lesser alternatives, such as intermediate disciplinary procedures, but the court "skipped all intermediate steps." Ragouzis characterizes the court's sanction as the result of first time, single violation. However, the record indicates the sanction was the result of a months-long, ongoing process to get Ragouzis to allow access to his units for repairs. As discussed above, after the parties tried to work with Ragouzis, the court began its involvement with informal discussion at the status conference and ordered Ragouzis in no uncertain terms that he was required to let the contractors in to perform repairs. Instead, Ragouzis repeatedly delayed and denied access prior to the Association's

request for injunctive relief. The preliminary injunction, like the court's verbal admonition, clearly ordered Ragouzis to allow access to his units. Yet, Ragouzis not only failed to allow access, but also violated the preliminary injunction in other ways by conducting an inspection, talking to workers, and by scraping and manipulating the pipes.

{¶ 53} Although the court did not impose lesser sanctions, it employed several intermediate efforts to obtain compliance with its orders and with Ragouzis' duties under the Condominium documents. Moreover, nothing in the language of Civ.R. 41 requires a court to employ lesser sanctions before dismissing a party's complaint.[2]

{¶ 54} As this court has previously noted, "[i]n *Quonset Hut*, 80 Ohio St.3d at 49, the Ohio Supreme Court held that a trial court did not abuse its discretion in dismissing a complaint with prejudice where the party had notice and an ample opportunity to explain its default and/or correct its default, yet it did not, and there was no reason for the trial court to expect that one more warning would have prompted the party to comply with the discovery order it had ignored for over four months . . ." *Ostigny*, 2025-Ohio-4885, at ¶ 93. Likewise, in the case before us, the trial court did not abuse its discretion in determining that Ragouzis' repeated violations of the court's orders were not going to end, and the only viable option was to dismiss his claims.

{¶ 55} Because the trial court did not abuse its discretion in dismissing Ragouzis complaint, his first assignment of error is overruled.

---

2. We note that Ragouzis does not challenge the trial court's use of Civ.R. 41 to dismiss his claims. However, in his reply brief, for the first time, Ragouzis presents other arguments and legal theories in this assignment of error. Under App.R. 16(C), an "appellant may file a brief in reply to the brief of the appellee." As noted by the Tenth District, "[t]he purpose of a reply brief is to afford the appellant an opportunity to respond to the brief of the appellee, not to raise a new argument for the first time." *Russell v. Ryan*, 2021-Ohio-2505, ¶ 34 (10th Dist.). Accordingly, this court has not considered those arguments raised for the first time in the reply brief. Loc.R. 16.1(C); *Cincinnati v. Triton Servs., Inc.*, 2022-Ohio-3832, ¶ 23 (1st Dist.).

**Pro Se Status**

{¶ 56} Ragouzis argues in his second assignment of error that the trial court erred in failing to consider his pro se status and he contends that this failure resulted in unfair prejudice. He argues that the court "failed to acknowledge his pro se status and imposed an excessively harsh sanction-dismissal with prejudice without progressive sanctions." He further argues that the trial court "demonstrated clear prejudice" against him when it dismissed his claims despite mitigating circumstances.

{¶ 57} When the complaint was filed, Ragouzis and the other plaintiffs were all represented by the same counsel. In February 22, 2024, counsel filed a motion to withdraw from representation of the plaintiffs.[3] The motion to withdraw was granted at a hearing on February 27, 2024. After counsel withdrew, Ragouzis represented himself, although at various times during the case indicated that although he did not officially have counsel, he was acting with the advice/counsel of attorneys in the background.

{¶ 58} We begin our discussion "with the principle that 'some leniency toward pro se litigants might be appropriate at times.'" *Borthwick v. Dept. of Bldg. & Inspections*, 2022-Ohio-1335, ¶ 7 (1st Dist.), quoting *Chase Manhattan Mtge. Corp. v. Smith*, 2007-Ohio-5874, ¶ 30 (1st Dist.). However, it is well established that pro se litigants are presumed to have knowledge of the law and that they are held to the same standard as litigants represented by counsel. *Souders v. Lazor*, 2025-Ohio-4649, ¶ 27.

{¶ 59} Ragouzis' argument regarding the trial court's failure to grant him leniency as a pro se litigant does not arise out of Ragouzis failure to comply with court procedure or rules, such as a missed deadline or misunderstanding of the law. *See Mitchell v. Holzer Med. Ctr.* 2017-Ohio-8244, ¶ 7 (4th Dist.) (leniency in briefing); *Robb v. Smallwood*, 2005-

---

3. The request to withdraw from representation was based in part by threats from Ragouzis toward counsel.

- 18 -

Ohio-5863, ¶ 5 (4th Dist.) (leniency in determining assignments of error). Instead, his argument is essentially that the court failed to be lenient on him in its sanction.

{¶ 60} Ragouzis does not explain why he needed an attorney to follow clear and direct court orders, or how pro se status contributed to decision to ignore orders. A party's pro se status does not generally excuse the failure to follow court orders. *See Unger v. Unger*, 2004-Ohio-7136, ¶ 22 (12th Dist.); *Ransom v. Aldi, Inc.*, 2017-Ohio-6993 (2nd Dist.). In this case, Ragouzis' pro se status does not excuse his failure to follow clear and direct court orders. Moreover, as discussed above, the trial court's decision to dismiss the complaint as a sanction for failing to follow the court's orders was not error.

{¶ 61} In addition, Ragouzis argues that the trial court was biased against him. As support, he cites instances where the trial court muted him at an online hearing stating that it wanted to "focus on being productive" and where the court indicated items would have been resolved "months and months ago" if Ragouzis had not put everyone through the "mishigas of these various ups and downs." He argues that he filed an affidavit of disqualification of the judge, who later recused from the case on February 27, 2025.[4]

{¶ 62} This court has recognized a distinction between a claim of judicial bias relating to the formal process used to remove a judge from hearing a case because the judge has an interest in the matter or is prejudiced in favor of one party and a claim relating to the instance where a judge's conduct in overseeing a case prevents a party from receiving a fair trial. *State v. Findler*, 2021-Ohio-449, ¶ 20; *State v. Loudermilk*, 2017-Ohio-7378, ¶ 17 (1st Dist.). An appellate court has "the authority to review a claim of judicial bias as it impacts the outcome of the case." *Loudermilk* at ¶ 19.

---

4. A new judge was assigned the case after the recusal. The second judge later declared Ragouzis a vexatious litigator.

{¶ 63} "Judicial bias is demonstrated by 'a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts.'" *Loudermilk* at ¶ 21, quoting *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463, (1956), paragraph four of the syllabus. "The demonstration of judicial bias is a high bar and we presume that judges are unbiased and unprejudiced in the matters over which they preside" and "the appearance of bias or prejudice must be compelling in order to overcome the presumption." (Cleaned up.) *Hill v. Hikel*, 2025-Ohio-2161, ¶ 12. "Comments by the trial court 'that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.'" *Escobar*, 2021-Ohio-4001, ¶ 38 (1st Dist.), quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994).

{¶ 64} We have reviewed the record, including the transcripts in this case and find that the court was exceedingly patient with Ragouzis and that dismissal of Ragouzis complaint was the result of his actions, not his pro se status or judicial bias. The second assignment of error is overruled.

## Reasonable Opportunity to Respond

{¶ 65} Finally, in his third assignment of error, Ragouzis argues that the court violated his due process rights because it dismissed his complaint without providing adequate notice that dismissal was a possible sanction and without affording him an opportunity to respond to the motion to show cause. Ragouzis argues that Civ. R. 6 allows responses to a written motion within 14 days and the trial court did not allow him 14 days to respond. He further argues that neither the preliminary injunction order nor the show cause order gave him notice that his complaint could be dismissed as a result of non-compliance.

{¶ 66} Unless otherwise indicated, a dismissal pursuant to Civ.R. 41(B) is an adjudication on the merits. Civ.R. 41(B)(3). "A dismissal on the merits is a harsh remedy that calls for the due process guarantee of prior notice." *Ohio Furniture Co. v. Mindala*, 22 Ohio St.3d 99, 101 (1986). "Civ.R. 41(B)(1)'s notice requirement is satisfied where plaintiff 'has been informed that dismissal is a possibility and has had a reasonable opportunity to defend against dismissal.'" *Harmon v. Walters*, 2025-Ohio-1037, ¶ 19 (1st Dist.), quoting *Quonset Hut,* 80 Ohio St.3d at 49. "The purpose of notice is to 'provide the party in default an opportunity to explain the default or to correct it, or to explain why the case should not be dismissed with prejudice.'" *Logsdon v. Nichols*, 1995-Ohio-225, ¶ 22, quoting McCormac, *Ohio Civil Rules Practice*, § 13.07, at 356-357 (2d Ed. 1992); *Ostigny*, 2025-Ohio-4885, at ¶ 86. "Thus, both notice of the possibility of dismissal and a reasonable opportunity to explain or correct the default or to explain why dismissal is not warranted are required before a Civ.R. 41(B)(1) dismissal is proper." *Harmon*, at ¶ 19.

{¶ 67} Civ.R. 6(C)(1) provides that "[r]esponses to a written motion, other than motions for summary judgment, may be served within fourteen days after service of the motion." As mentioned, the motion for a show cause order was filed on August 19, the court's show cause order was issued on August 26, scheduling a hearing for August 30. Ragouzis claims he was not afforded the 14 days to respond provided in Civ.R. 6. Instead, he argues he was only given four days before the hearing to respond. First, we note that Ragouzis had 11 days, from August 19 filing of the show cause motion until the hearing on August 30, to respond to the Association's motion.

{¶ 68} In addition, Ragouzis failed to raise this issue below and any error would be subject to a plain error analysis. *Calloway v. McKenna*, 2023-Ohio-3130, ¶ 14 (1st Dist.). In an appeal of a civil case, "the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which

- 21 -

no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 1997-Ohio-401, syllabus; *Calloway* at ¶ 14.

{¶ 69} With regard to Civ R. 41 dismissals, "[t]he purpose of notice is to give the party who is in jeopardy of having his or her action or claim dismissed one last chance to comply with the order or to explain the default." *Sazima v. Chalko*, 1999-Ohio-92, ¶ 13; *Harmon*, 2025-Ohio-1037, at ¶ 19.

{¶ 70} In this case, both the Association's show cause motion and Patterson's motion requested that the court dismiss Ragouzis' complaint as a sanction for his failure to comply with the court's orders. The Ohio Supreme Court has determined that a party has adequate notice that dismissal is a possible sanction when the opposing party's motion requests dismissal. *Quonset Hut*, 80 Ohio St.3d at 48; *Sazima* at ¶ 14. Therefore, Ragouzis had adequate notice that dismissal of his claims was a possible sanction.

{¶ 71} With regard to an opportunity to respond, Ragouzis appeared at the show cause hearing, participated, and offered evidence. Early in the hearing, the court clarified that the Association was requesting dismissal of Ragouzis' complaint. Later in the hearing, the court directly asked Ragouzis why his complaint should not be dismissed and gave him an opportunity to present arguments for a lesser sanction.

{¶ 72} Moreover, the court asked Ragouzis at the show cause hearing whether he had filed anything in response to the motions. Ragouzis responded that he had not filed a response but had reviewed the motions. Shortly after this exchange, Ragouzis indicated he did not feel it was necessary to file a response to the Association's motion "since we were having this hearing today." Therefore, we find Ragouzis had both adequate notice and an opportunity to respond.

{¶ 73} Although Ragouzis argues that the facts of an Ohio Supreme Court case are similar to this case, we find the facts differ greatly. *See Hillabrand v. Drypers Corp.*, 2000-Ohio-468. In *Hillabrand*, the trial court granted a motion for sanctions two days after it was filed and before the party had an opportunity to respond in any manner. *Id*. at ¶ 12. The Ohio Supreme Court reversed, finding the party did not have a reasonable opportunity to defend against dismissal. *Id*. The party in Hillabrand had no opportunity to respond, unlike the case before us. As mentioned, Ragouzis was present at the hearing, indicated he did not file a response to the motion because "we were having this hearing," and was able to fully respond to the allegations and to defend against dismissal.

{¶ 74} Because Ragouzis had adequate notice and an opportunity to respond, his third assignment of error is overruled.

## Conclusion

{¶ 75} After reviewing Ragouzis' assignments of error, we find no merit to his arguments. Accordingly, the decision of the trial court to dismiss Ragouzis' complaint as a sanction for his failure to follow the court's orders is hereby affirmed.

HENDRICKSON, P.J. and WALDICK, JJ., concur.

_____

Judges Robert A. Hendrickson and Mike Powell of the Twelfth Appellate District, and Judge Juergen A. Waldick of the Third Appellate District, sitting by assignment in the First Appellate District pursuant to Ohio Const., art. IV, § 5(A)(3).